## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

DERICK BROWN, ATIBA FLEMONS, and
JEFFREY TAYLOR,

        Plaintiffs,

   v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

        Defendant.

Case No. 2:19-cv-02020

The Honorable Colin Stirling Bruce

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS UNDER FRCP 12(B)(6)

Dated: May 28, 2019

Respectfully Submitted,

**THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS**

By:    s/ Christopher B. Wilson
       One of Its Attorneys

       Christopher B. Wilson
       Jon R. Buck
       Christopher Lepore
       PERKINS COIE LLP
       131 S. Dearborn; Suite 1700
       Chicago, IL 60603
       Tel: (312) 324-8400
       Fax: (312) 324-9400
       CWilson@perkinscoie.com
       JBuck@perkinscoie.com
       CLepore@perkinscoie.com

Plaintiffs' Amended Complaint attempted to assert a class action on behalf of thousands of employees across multiple departments and campuses of the University of Illinois. Plaintiffs Amended Complaint should be dismissed, however, because their *individual* claims based on their own experiences of conduct arising out of their own employment, fail as a matter of law on all counts. All three Plaintiffs assert claims for hostile work environment (Count I) and retaliation (Count III) under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Illinois Civil Rights Act ("ICRA") (Counts II and IV). Flemons and Taylor also assert claims for disparate treatment under those same statutes (Counts V and VI). But even assuming Plaintiffs' well-pled factual allegations are true, the purported hostile conduct to which Plaintiffs were alleged to have been subjected consisted of unrelated, sporadic and isolated events. The allegations are not sufficiently severe or pervasive to create an abusive, hostile work environment on the basis of race.

Furthermore, Plaintiffs' retaliation claims fail because Plaintiffs have not established a causal connection between their protected activity and any adverse employment action. For example, Flemons' allegations concerning his claim for retaliation allege disparate incidents occurring many years apart. Similarly, neither Brown nor Taylor identify *any* adverse action that can serve as the basis for their retaliation claims.

Finally, Taylor and Flemons did not fully and timely exhaust their disparate treatment claims before the EEOC and in any event, fail to state plausible claims. Most notably, neither identify any timely adverse action to which they were subjected.

Plaintiffs' claims can and should be dismissed based on established legal doctrines as a matter of law.[1]

---

[1] In light of the deficiencies in Plaintiffs' individual claims, the Court need not reach Plaintiffs' purported attempts to assert claims on behalf of large classes of University employees. But in

## RELEVANT ALLEGATIONS

Plaintiffs Derick Brown, Atiba Flemons and Jeffrey Taylor are current, black employees of the University of Illinois. (Compl. ¶ 8.) The factual allegations relevant to each are as follows:

### 1.  Plaintiff Derick Brown.

Plaintiff Derick Brown is currently employed by the University as a Machinist in its Facilities and Services ("F&S") Department. Brown has been employed by the University since 2006. (Compl. ¶ 10.) Brown filed an EEOC charge against the University in December 2017. (Compl. ¶ 18.) Chris McCoy served as Brown's supervisor at relevant times. (Compl. ¶¶ 88-107.)

### a.  Alleged Hostile Work Environment.

Apart from conclusory generalizations (e.g., "Brown experienced racial harassment on a daily or near-daily basis" (Compl. ¶ 291.)), Brown identifies only a few discrete, intermittent incidents that he alleges contributed to his purported hostile work environment. Specifically, Brown claims that, in August of 2015, a coworker put on a hood and taunted him while McCoy was present. (Compl. ¶ 296.) Brown refers to this hood as a "KKK hood," (*id.*), but apparently did not report this incident for approximately two years. (Compl. ¶ 320.) Brown also claims that, at unspecified times, McCoy referred to him "using racially-derogatory language" such as "boy." (Compl. ¶ 302.) Brown also alleges McCoy called him lazy, stupid and "worthless." *Id.*

Brown also alleges other conduct which, on its face, had nothing to do with his race. He claims that McCoy harshly and loudly criticized his work, was unsympathetic following the

---

the event Plaintiffs' attempt to pursue such claims continue, they are inappropriate for class certification under Federal Rule of Civil Procedure 23 for several independent reasons. Defendants will file a motion addressing the inappropriate nature of these class-wide allegations in the event the Court permits the individual named Plaintiffs to proceed.

death of a family member in 2016, gave him undesirable assignments and once expressed hope that he would not return from vacation. (Compl. ¶¶ 308-314.) Brown also claims that, on unspecified occasions, his co-workers made comments about his sexual orientation, referring to him as "gay" and "queer." (Compl. ¶¶ 306-307.) Brown asserts that his white colleagues were not treated in the same manner he was. (e.g., Compl. ¶¶ 311, 312, 314.)

Brown alleges that in late 2016 or early 2017, he "complained specifically" to a superior, Ken Bunting, that "McCoy was harassing him and treating him differently because of his race." (Compl. ¶ 316.) Bunting held a meeting with McCoy, who purportedly "smirk[ed]" at Brown afterward. *Id*. In the spring of 2017, Brown renewed his complaint to Bunting and another superior, Dave Bang. (Compl. ¶ 317.) In response to the complaint, Brown claims that Bunting and Bang organized a meeting with McCoy and Brown. *Id*. During the meeting, Bunting and Brown said that "McCoy would work on his attitude." After the meeting, when McCoy asked Brown "Are we cool?" Brown said "yes." *Id*.

In August of 2017, following his receipt of a negative performance review, Brown claims he complained again to Bunting and Bang. (Compl. ¶ 319.) In this complaint, Brown, for the first time, mentioned the purported "KKK hood" incident, which occurred approximately two years prior. *Id*.

Following this complaint, the University promptly placed McCoy on leave and initiated an investigation.[2] In October 2017, the University's investigation did not corroborate a violation of University policy. (Compl. ¶ 322.) Subsequently, Brown claims his white coworkers excluded him, refused to speak with him and referred to him as "gay" and "queer," but does not describe any specific incident. (Compl. ¶ 328.) Brown then transferred positions to a "tool

---

[2] Around the same time, while Brown was at home, his car was vandalized, but offers nothing but innuendo and speculation to connect this incident to the University or any issue in this case. (Compl. ¶ 428.)

attendant." (Compl. ¶ 329.)

### b. Alleged Retaliation.

As noted above, Brown asserts he complained of discrimination "in late-2016 or early-2017," in "spring 2017" and in August of 2017. (Compl. ¶¶ 421, 426.) Brown claims he experienced a temporary reassignment, in addition to "increased scrutiny, negative employment evaluations, job reassignment, … [and] threats and intimidation" from his coworkers. (Compl. ¶¶ 420, 425.) Brown also, as noted above, voluntarily transferred jobs at some unspecified point following his purported complaints of discrimination. (Compl. ¶ 432.)

## 2. Plaintiff Atiba Flemons.

Plaintiff Atiba Flemons is employed as a Brick Mason in the F&S Department at the University. (Compl. ¶ 11.) Flemons was employed by the University from 2008 until 2009 and from 2011 to the present. *Id*. Flemons filed EEOC charges in February 2017 and May 2017. (Compl. ¶ 20.)

### a. Alleged Hostile Work Environment.

Although Flemons attempts to assert claims based on allegations dating back to 2008 (over 10 years prior to the filing of the Complaint), the only conduct described by Flemons that occurred in the applicable statute of limitations period involved: (i) his alleged observation and subsequent complaint about a car with two confederate flag stickers parked in a University parking lot in March and June of 2017—which he claims was not investigated; and (ii) a supervisor asked him if he "was sure" he did not know the whereabouts of a vacuum cleaner that was subsequently recovered. (Compl. ¶¶ 370, 374, 376.) Flemons alleges that these incidents created a hostile work environment, but does not allege the incidents interfered with his work performance.

### b.    Alleged Disparate Treatment.

Flemons claims that, in October 2015, the University's Human Resource Department "disallowed" him from taking a civil service examination for a Foreman or Sub-Foreman position due to his lack of qualification, while a less experienced white colleague, Eric Quinly, was previously permitted to take the test.  (Compl. ¶¶ 441-442.)  Flemons also asserts that, on numerous unspecified occasions, he was denied the opportunity to work overtime.  (Compl. ¶ 444.)  The only specific example Flemons provides, however, occurred in December 2016, when Flemons admits that his Foreman, Bruce Rogers, offered him the opportunity to work overtime.  Flemons voluntarily refused this opportunity because "the shop was closed during the holidays."  After Flemons turned this overtime opportunity down, Rogers worked the shift himself.  (Compl. ¶¶ 445-450.)

### c.    Alleged Retaliation.

In the portion of the Complaint dedicated to Flemons' retaliation claim, he fails to identify any specific protected activity.  In other parts of the Complaint, Flemons claims that he complained of "racial harassment" in June 2014 and on various occasions in 2012 (Compl. ¶ 362.)  And, as set forth above, Flemons alleges he complained about a car with two confederate flag stickers parked in a University parking lot in June 2017.  (Compl. ¶ 376.)

Significantly, Flemons does not allege he was subjected to any specific adverse action.  Instead, he generally alleges he was "denied overtime … opportunities" and subjected to "racial harassment, threats, discipline [and] negative evaluations." (Compl. ¶¶ 454-458.)  The only potential adverse actions referenced by Flemons with any specificity involve him allegedly being "disallowed" from taking a civil service example in October 2015 and an alleged refusal to reschedule an overtime shift offered to him in December 2016.

### 3. Plaintiff Jeffrey Taylor.

Plaintiff Jeffrey Taylor is a Culinary Worker III who has been employed by the University since 2015. (Compl. ¶ 12.) Taylor filed an EEOC charge on July 19, 2018, but never received a notice of right to sue letter. (Compl. ¶¶ 21-22.)

#### a. Alleged Hostile Work Environment.

According to Taylor, in October 2017, a white supervisor in his department wrote on Facebook, "I eat n****a like you" and made a "derogatory" comment about black women to an acquaintance of his. (Compl. ¶ 389.) In March 2018, a black coworker sent a text message which "called Taylor a 'bitch' and used the N word in the message." (Compl. ¶ 391.) Taylor reported these incidents to Rita Davis, a member of the University's Human Resources Department, but neither employee was disciplined.[3] (Compl. ¶ 392.)

Taylor also identifies a series of race-neutral incidents in 2017 involving a former supervisor, Don Van Liew, in which Van Liew "scrutinized" him, "policed his tone" (for which he received a write-up in 2017), and "used profanity toward him." (Compl. ¶¶ 399-407.) Taylor asserts that this treatment was "inferior" to that of white colleagues. (Compl. ¶ 399.) For example, Taylor claims, on one occasion, that Van Liew refused to let him use a pushcart. (Compl. ¶ 402.) Taylor claims he reported Van Liew's conduct on an unspecified date to Keith Garrett. (Compl. ¶ 401.) On another unspecified occasion, Taylor felt that a different supervisor, Dale Martin, treated a black student with a malfunctioning meal card differently than a group of white students who took food for free. (Compl. ¶¶ 408-409.) Taylor reported this incident to Alma Sealine, a Housing Director. (Compl. ¶ 410.) Finally, Taylor also claims that

---

[3] Taylor also attempts to adopt the alleged experiences of other coworkers as contributing to his own purported hostile work environment. (Compl. ¶¶ 394-397.) According to Taylor, a coworker told him that "Terry Tester, a white Culinary Worker … directed the N word to a black employee, stating that his child's favorite word is "n*gga." (Compl. ¶ 394.)

at some point an unnamed supervisor "nearly struck Taylor with an oven door when he aggressively opened it as Taylor was walking by." (Compl. ¶¶ 411-412.)

Taylor formally complained of discrimination in October 2017 to the University's Office of Access and Equity ("OAE") and provided subsequent updates to his complaint in 2018. (Compl. ¶ 414.) Following its investigation, the University did not corroborate a violation of its policy. (Compl. ¶ 415.)

At some unspecified point, Taylor voluntarily changed his schedule to avoid working with Van Liew and Janowski. (Compl. ¶ 316.) Taylor does not, however, allege the supposedly hostile work environment to which he was subjected affected his work performance.

### b.     Alleged Disparate Treatment.

In "early 2016," Taylor claims he applied for a promotion but was not permitted to take the relevant civil service examination because he "did not have enough prior experience." (Compl. ¶¶ 462-463.) He further asserts that two less experienced white employees later received the promotion in question. (Compl. ¶ 464.) Taylor also allegedly received discipline arising out of his choice of clothing in October 2017, despite other unidentified white colleagues dressing similarly and not receiving discipline, as well as a write-up for his tone due to his use of profanity. (Compl. ¶ 471.)

### c.     Alleged Retaliation.

Taylor claims he complained of discrimination to several different individuals in October 2017, including a formal complaint of discrimination to OAE, which he "update[d]" through 2018. (Compl. ¶ 414.) In response, according to Taylor, he was written up for his "tone," reported for a uniform violation and excessively scrutinized. (Compl. ¶¶ 471, 478, 479.) Ultimately, according to Taylor, he was "constructively reassigned" because he voluntarily

changed his schedule.  (Compl. ¶ 480.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a complaint fails to allege facts sufficient "to state a claim to relief that is plausible on its face" and presents nothing more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 533, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a court must accept a plaintiff's well-pleaded facts as true, that does not extend to legal conclusions.  *See Porter v. Pipefitters Ass'n Local Union 597, U.A*., 2013 WL 5162206 at *2 (N.D. Ill. Sept. 12, 2013) (citing to *Iqbal*, 556 U.S. at 677).  "A plaintiff is required to include allegations in the complaint that 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' and 'if they do not, the plaintiff pleads itself out of court.'"  *Shankle v. Vill. of Melrose Park*, No. 16 C 2582, 2018 WL 844422, at *1 (N.D. Ill. Feb. 12, 2018).

Here, Plaintiffs' claims fail to state any claim upon which relief can be granted because: (1)  Plaintiffs' individual allegations do not rise to the level required to establish a hostile work environment (Section I); (2) Taylor and Brown did not suffer an adverse action for purposes of their retaliation claim, and Flemons cannot establish a causal connection between his alleged protected activity and any adverse action he suffered (Section II); (3) Plaintiffs failed to fully and timely contest their disparate treatment claims before the EEOC (Section III.A); (4) Plaintiffs fail to state a claim for disparate treatment (Section III.B); and (5) Plaintiffs' claims under the ICRA fail as a matter of law for the same reasons their underlying federal claims are deficient, and because the Illinois statute does not extend to Plaintiffs' claims (Section IV).

# ARGUMENT

## I. PLAINTIFFS' HOSTILE WORK ENVIRONMENT CLAIMS MUST BE DISMISSED (COUNT I).

Under Title VII jurisprudence, a hostile work environment "is one in which the harassment is sufficiently 'severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Triplett v. Starbucks Coffee*, No. 10 C 5215, 2011 WL 3165576, at *4 (N.D. Ill. July 26, 2011). In other words, the working environment must be "permeated with discriminatory intimidation, ridicule and insult." *Sowers v. VVF Illinois Servs.*, *LLC*, No. 18 C 6496, 2019 WL 1923407, at *3 (N.D. Ill. Apr. 30, 2019). To state a viable claim for hostile work environment, a plaintiff must establish "(1) he was subject to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment, and (4) there is a basis for employer liability." *Id*. When analyzing whether a work environment is objectively hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Winters v. Hamos*, No. 16-CV-10777, 2018 WL 3458266, at *4 (N.D. Ill. July 18, 2018).

In the context of hostile work environment claims, courts only consider allegations that fall outside of the statute of limitation (i.e., more than 300 days prior to the filing of a plaintiff's EEOC charge) if "the acts involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Sanford v. Walgreen Co.*, No. 08-CV-6325, 2009 WL 3152795, at *5 (N.D. Ill. Sept. 23, 2009) (internal citation omitted). Here, Plaintiffs' allegations that fall outside of the statute of limitations fail to meet this test and must be disregarded as time barred.

Flemons, for example, alleges only two purported examples of discriminatory conduct within the statute of limitations. Flemons alleges (1) that Bruce Rogers, a supervisor, questioned Flemons in 2019 about whether he knew the whereabouts of a vacuum; and (2) that Flemons observed a car with two confederate flags in parking lots reserved for University personnel in March 2017 and June 2017, which he then reported. Flemons only other allegations about Rogers date back to 2013 or before—more than six years earlier and far outside the statute of limitations. Moreover, Flemons does not purport to know the identity of the owner of the car referenced above, much less whether it could somehow be connected to his timely allegations. The allegations that occurred outside of the statute of limitations must be disregarded.

Similarly, Brown's allegation that a coworker, Rocky Atwood, allegedly wore a "KKK hood" in August 2015 while McCoy laughed was an isolated, discrete incident unconnected to his timely claims. Brown does not cite any other incidents involving Atwood and McCoy. And apart from unspecified occasions when McCoy referred to Brown as a "boy," the remaining allegations about McCoy claim he was generally hostile beginning at some unspecified point in the following year, 2016. Like Flemons, Brown cannot demonstrate any reasonable link between the timely and untimely conduct he alleges.

Inside the statute of limitations period, Plaintiffs are left with only a few isolated and discrete incidents, coupled with general allegations of "aggressive" behavior. These allegations do not suffice to establish "severe and pervasive" harassment for purposes of a hostile work environment claim. Indeed, the Seventh Circuit has observed, "Title VII is not ... a general civility code and will not find liability based on the sporadic use of abusive language." *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). But that is exactly what Plaintiffs ask this Court to

impose. Taylor, for example, relies on allegations involving a supervisor and two coworkers who used a racial slur outside of work on a personal Facebook page, along with general hostility expressed by supervisors. And Taylor does not and cannot claim that racial animus motivated his coworkers' use of occasional slurs (one of whom was black herself and another who allegedly recounted something his child had said).[4] Courts have rejected hostile work environment claims with far more disturbing facts. *See Walls v. Turano Baking Co.*, 221 F.Supp.2d 924, 929 (N.D. Ill. 2002) (dismissing hostile work environment claim where supervisor, coupled with non-racial abusive language, "used the word 'nigger' to refer to [plaintiff] in a conversation with a third-party that was overheard by [plaintiff]" and that "occasional use of racial epithets by coworkers not motivated by racial animus does not create a hostile environment."). Thus, Taylor's hostile work environment claim fails as a matter of law.

Brown's allegations are similarly flawed. Brown relies on the time-barred "KKK hood incident" in 2015, his supervisor's reference to him as a "boy" and "worthless" on unspecified occasions, and his supervisors' and coworkers' general hostility toward him (such as comments based on his sexual orientation) and disparate treatment of him.[5] None of these allegations are sufficient to establish a hostile work environment claim. *See Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) (supervisor's comments regarding age, sex, and race, such as "men are lazy and 'want to milk all the overtime they can get,'" were rude and inappropriate, but not severe

---

[4] Taylor only heard about his coworkers' use of this slur in discussing his child's "favorite word" second-hand, thereby lessening its impact on him. *See Russell v. Bd. of Trustees of Univ. of Illinois at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001) ("When harassing statements are 'directed at someone other than the plaintiff, the impact of [such] 'second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.'")

[5] In general, Plaintiffs' conclusory attempts to support their hostile work environment claims by claiming, without factual support, that white employees were not subjected to hostility or aggression fail as a matter of law. *See Badal v. Ariens Co.*, No. 17-C-1704, 2018 WL 3037401, at *6 (E.D. Wis. June 19, 2018).

and pervasive); *Winters*, 2018 WL 3458266, at \*4 (holding claims of, among things, "baseless poor reviews," an "excessive workload" and a suspension supported claims of discrimination, not hostile work environment); *Triplett*, 2011 WL 3165576, at \*5 (dismissing hostile work environment claim where the plaintiff alleged, among other things, she was subjected to a racially insensitive comment and "racially-based disciplinary actions, where she was disciplined more severely than similarly situated white employees"). Brown's hostile work environment claim therefore must be dismissed.

As noted above, Flemons asserts only two timely incidents of harassment, one of which had nothing to do with his race (his supervisor questioning if he knew the whereabouts of a vacuum) and the other which occurred outside the workplace and involved some unknown person. Because allegations of sporadic offensive conduct do not establish a hostile work environment, Flemons' claim fails. *See Ford*, 587 F.3d at 848.

As an independent basis to dismiss the hostile work environment claims of all three Plaintiffs, under the law a plaintiff must "allege that his workplace was sufficiently hostile to interfere with his work performance." *Winters*, 2018 WL 3458266, at \*5. Plaintiffs admit they received negative performance evaluations and write-ups, but none of them attribute a decline in performance to their work environment. Accordingly, all of Plaintiffs' hostile work environment claims must be dismissed for this reason as well. *See id.*

## II.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE CLAIMS FOR RETALIATION (COUNT III).

To state a claim for retaliation, Plaintiffs must establish: "1) [they] engaged in protected activity; 2) [they] suffered a materially adverse employment action; and 3) there was a causal link between the protected activity and the adverse action." *Marijan v. Univ. of Chicago*, No. 17-CV-9361, 2018 WL 6604967, at \*4 (N.D. Ill. Dec. 17, 2018). Importantly, "[f]ailure to show

12

that a plaintiff suffered an adverse employment action will lead to the dismissal of plaintiff's claims." *Id.* There must also be a non-conclusory causal link alleged between the adverse action and the plaintiff's alleged protected activity. *See id.* (observing, in deciding a motion to dismiss, that plaintiffs "must prove that a 'retaliatory animus' motivated the defendant's adverse action against them"); *Cleaves v. City of Chicago*, 68 F.Supp.2d 963, 967 (N.D. Ill. 1999); *Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at *3 (N.D. Ill. Sept. 20, 2018). Unlike discrimination claims under Title VII, which are evaluated under a "motivating factor" standard, retaliation claims require proof of "but-for" causation. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Under these standards, each of Plaintiffs' retaliation claims fails as a matter of law.

Brown, for example, asserts hostility displayed by coworkers and a supervisor, a purported negative performance review, and a temporary reassignment. But these do not constitute materially adverse actions, and thus his retaliation claim fails. *See Collins v. Meike*, 52 F. App'x 835, 837 (7th Cir. 2002) (temporary reassignment did not qualify as adverse action); *Marijan*, 2018 WL 6604967, at *4 (noting that "'unfair reprimands, negative performance reviews, unaccompanied by tangible job consequences' or 'snubbing by superiors and co-workers' are insufficient" adverse actions to support a claim of retaliation); *see also Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107–08 (7th Cir. 2012) (collecting cases and holding that a coworker's incivility, name-calling, and threatening statement that "paybacks are hell" would not dissuade a reasonable person from complaining of discrimination); *Henry v. Milwaukee Cty.*, 539 F.3d 573, 587 (7th Cir.2008) (holding that unspecified intimidation, door-slamming by superiors, and other "petty slights and minor annoyances" would not deter a worker from reporting discrimination); *Rhoads v. Rieth–Riley Constr. Co.*, No. 3:11–CV–366–TLS,

2013 WL 1281749, at *19 (N.D. Ind. Mar. 26, 2013) (holding that a coworker's encroachment of the plaintiff's physical space would not dissuade a reasonable person from making a charge of discrimination); *Davis v. Time Warner Cable of Se. Wisc., L.P.*, 651 F.3d 664, 677 (7th Cir.2011) ("Performance improvement plans . . . are not, without more, adverse employment actions."); *Volovsek v. Wis. Dep't of Agric. Trade and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003) ("disputed performance reviews ... do not, themselves, amount to the kind of adverse employment action that constitutes discrimination or retaliation").  Brown's voluntary decision to transfer his job also does not qualify as an adverse action. *See Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) (finding no adverse action where plaintiff "voluntarily left her job").  Accordingly, because Brown alleges no activity that constitutes adverse actions, his retaliation claim must be dismissed.

Similarly, Taylor fails to identify any allegedly adverse action that occurred *after* he purportedly engaged in protected activity, except for a few disciplinary write-ups.  But even these disciplinary actions are not alleged to have had tangible employment consequences, and thus do not constitute adverse actions.  *See Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("Unfair reprimands or negative performance reviews, unaccompanied by tangible job consequences" do not qualify as a material adverse actions); *Derden v. Sheriff of Cook Cty.*, No. 17 C 9095, 2018 WL 5994928, at *3 (N.D. Ill. Nov. 15, 2018); *Marijan*, 2018 WL 6604967, at *4 (observing that "negative performance reviews" do not qualify as material adverse actions). So Taylor's claims also fail as a matter of law.

As for Flemons, the Complaint simply fails to make any reasonably plausible connection between any allegedly adverse action and any protected activity.  District courts in the Seventh Circuit routinely dismiss Title VII retaliation claims where, as here, a plaintiff alleges he

engaged in protected conduct that occurred well before the adverse action in question without any explanation of distant temporal proximity between the two. *See, e.g., Lugo v. Int'l Bd. of Elec. Workers Local # 134*, 175 F.Supp.3d 1026, 1038 (N.D. Ill. 2016) (granting motion to dismiss retaliation claim where one-year gap existed between the plaintiff's protected activity and the alleged retaliation, and the plaintiff did not explain the long delay between the two); *Ghiles v. City of Chicago Heights*, No. 12 CV 07634, 2016 WL 561897, at *2 (N.D. Ill. Feb. 12, 2016) (holding that an unexplained six-month delay between the protected activity and the retaliation was "too remote" to link the two events and establish causation); *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *7 (N.D. Ill. Feb. 28, 2017) ("Because the complaint does not explain the delay of at least thirty months between [the protected activity] and the allegedly retaliatory conduct, it does not state a plausible claim of a causal connection based on temporal proximity."); *Marijan* 2018 WL 6604967, at *5 (dismissing a plaintiff's claim because of an unexplained 19-month gap); *Carmody v. Bd. of Trustees of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014) (affirming dismissal where three years separated protected activity and the alleged retaliation). Indeed, "[f]or a retaliation claim inferring causation based on timing, as here, the adverse employment action must follow 'close on the heels of protected expression'—typically, only a few days later." *Ghiles*, 2016 WL 561897, at *2 (citation omitted).[6]

---

[6] Flemons also cannot bolster his claims with conclusory allegations of "increased scrutiny" and "hostility." *Straub*, 2018 WL 4512060, at *5 (observing, in dismissing retaliation claim, that plaintiff "fails to provide any nonconclusory factual allegations to causally connect his termination and the [protected activity]"); *Harris v. Firstar Bank Milwaukee*, N.A., 97 F. App'x 662, 665 (7th Cir. 2004) (holding the plaintiff's "retaliation claim fails because the actions of which she complains—intimidating comments, dirty looks, and increased scrutiny by her supervisors—even if true, do not constitute adverse actions by her employer").

Flemons' attempts to bridge the causal gap by referencing unspecified complaints "on numerous occasions" are also too conclusory to establish a temporal (or other) connection between their alleged protected and any adverse action.  *See Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *7 (N.D. Ill. Dec. 10, 2018) (dismissing retaliation claim where the causal nexus between a 2013 EEOC charge, later "unspecified" internal complaints and an adverse action were "at best unclear");  *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19 (2d Cir. 2015) (upholding grant of motion to dismiss Title VII retaliation claim where it was "impossible to determine" whether temporal proximity supported an inference causation because the plaintiff failed to supply dates of relevant events).

Finally, "[p]recedent confirms that a plaintiff … alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007).  But many of Plaintiffs' assertions—other than those specifically discussed above—do not allege with any specificity what Plaintiffs complained about, when they complained, or to whom they complained. *See Ross*, No. 18-CV-4200, 2018 WL 6448464, at *7; *see, e.g.*, Compl. ¶¶ 240, 327.  The lack of specificity in Plaintiffs' retaliation claim allegations provides another, independent basis for dismissal.

## III. PLAINTIFFS' TITLE VII DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW (COUNT V).

### A. PLAINTIFFS' DISCRIMINATION CLAIMS WERE NOT TIMELY CONTESTED AT THE EEOC.

It is well established that, prior to filing suit under Title VII, a plaintiff must first exhaust his administrative remedies and file a charge of discrimination with the EEOC or its state equivalent within 300 days of the last alleged act of discrimination.  *See, e.g., Guo v. Nw. Univ.*, No. 10 C 5226, 2011 WL 1882489, at *2 (N.D. Ill. May 17, 2011).  For discrete employment

actions, such as a failure to promote, each employment action at issue must be identified in a charge of discrimination. *See, e.g., id.* (observing, in the context of a failure-to-promote claim (and other discrete employment actions), a plaintiff must allege he "filed a charge with the appropriate state or federal agency for *each alleged failure to promote* within 300 days of its occurrence") (internal citations omitted) (emphasis added). "Failure to comply with that reporting requirement, renders those failure to promote claims time-barred." *Id.*

Here, according to the Complaint, Flemons first filed his EEOC charge on February 2, 2017, while Taylor filed his on July 19, 2018. Both Flemons and Taylor are foreclosed from challenging any alleged adverse actions that occurred more than 300 days prior to these dates. But Taylor's disparate treatment claim largely rests upon his alleged failure to receive a promotion in or around early-to-mid 2016, which occurred over two years prior to the filing of his charge. And Flemons mainly laments his lack of promotion in October 2015, which occurred well over a year prior to his EEOC charge. Accordingly, Flemons' and Taylor's failure to timely contest these purported adverse actions before the EEOC is fatal and their disparate treatment claims must be dismissed.

In addition to his failure to contest the adverse action of the EEOC, Taylor also admits that he did not receive a notice of right to sue from the EEOC prior to commencing suit. *See Wanda Heard v. U.S. Steel*, 2006 WL 3775942 (S.D. Ill. Dec. 21, 2006) ("Before an employee can sue under this provision, she must timely file a charge with, and ***receive a "right to sue" letter" from, the EEOC.***") (emphasis added); *Derouin v. Louis Allis Div., a div. of Litton Indus. Prod., Inc.*, 618 F.Supp. 221, 226 (E.D. Wis. 1984) (observing that "a plaintiff must obtain a proper Notice of Right to Sue from the EEOC before bringing a court action under Title VII.").

As a result, his Title VII claims must be dismissed based upon his failure to exhaust administrative remedies.

## B. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR DISCRIMINATION.

To assert a plausible claim of discrimination, Plaintiffs must plead facts alleging (1) membership in a protected class, (2) an adverse employment action, and (3) some connection between their protected class and the adverse employment action. *See Shankle v. Vill. of Melrose Park*, No. 16 C 2582, 2018 WL 844422, at *2 (N.D. Ill. Feb. 12, 2018) (plaintiff failed to state claim because she did not "explain" how her employer's denial of work assignments constituted adverse action). Plaintiffs cannot establish an adverse action for purposes of a failure-to-promote claim with conclusory allegations. *See Resendez v. Klein Tools, Inc.*, No. 12 C 5697, 2013 WL 5609335, at *7 (N.D. Ill. Oct. 10, 2013).

Not every employment action—even if unfavorable—supports a discrimination claim. Instead, the action "must materially alter the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). An adverse action imposes a significant change in employment status, such as:

> (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.

*Monroe v. Columbia Coll. of Chi.*, No. 17-cv-5837, 2018 WL 4074190, at *3 (N.D. Ill. Aug. 27, 2018) (internal quotation marks omitted).

Here, as a matter of law, Taylor's receipt of write-ups on unspecified occasions or general subjection to "increased scrutiny" did not materially alter the terms and conditions of his employment. *See Boss*, 816 F.3d at 919 ("Unfair reprimands or negative performance reviews,

unaccompanied by tangible job consequences" do not qualify as a material adverse actions); *Derden*., 2018 WL 5994928, at *3. Similarly, while Flemons' allegation that he was denied overtime opportunities may, under some circumstances, qualify as an adverse action, the only specific allegations by Flemons here fall far short of that standard.[7] By Flemons' own account, he was offered and *voluntarily* refused the opportunity to work an overtime shift in December 2016 because it was "during the holidays." While Flemons asserts that his foreman, Bruce Rogers, should have rescheduled the shift to accommodate his preferences, Flemons admits that Rogers did not do so for *any* employee. Rogers' policy was not limited to Flemons. Instead, Rogers worked the shift himself after Flemons turned it down. Thus, Flemons' voluntary refusal of a shift does not qualify as a material adverse action. *See, e.g., Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *7 (N.D. Ill. Dec. 10, 2018) (observing, in finding plaintiff had not sufficiently pled an adverse action on the basis of his sick leave use that the plaintiff could not "claim that his employer took an adverse employment action against him while at the same alleging that he voluntarily chose to use his own sick time").

More broadly, Plaintiffs' discrimination claims fail because they do not plausibly allege that they suffered any adverse employment action *because* of their race. To proceed, Plaintiffs must set forth more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at 678. But here, Plaintiffs plead no facts from which the Court can reasonably infer a connection between their protected class and an adverse action. *See Parks v. Speedy Title & Appraisal Review Servs.*, 318 F.Supp.3d 1053, 1064 (N.D. Ill. 2018) ("Even accepting that allegations of being denied a raise and promotion suffice to plead that Plaintiff suffered a materially adverse action, Plaintiff does not allege that these raise and promotion denials were

---

[7] To assert a claim, Flemons is required to identify denial of overtime with specificity. *See Resendez*, No. 12 C 5697, 2013 WL 5609335, at *7.

based on discriminatory animus. Without such allegations, her claims based on these denials must fail."). To that end, Plaintiffs fail to allege the identity of the individual decision-makers for their time-barred failure-to-promote claims (the only potential adverse actions to which they were subjected), much less allege that they harbored discriminatory animus. Accordingly, Plaintiffs fail to state a claim for discrimination.

## IV. PLAINTIFFS' ICRA CLAIMS FAIL AS A MATTER OF LAW (COUNTS II, IV and VI).

Plaintiffs' ICRA claims fail: (i) for the same reasons as Plaintiffs' Title VII claims (with the exception of Defendants' failure-to-exhaust arguments);[8] and (ii) because ICRA is a disparate impact statute not designed for intentional claims. *See Warr-Hightower v. Illinois Cent. Coll.*, No. 117CV01153JBMJEH, 2017 WL 5484671, at *8 (C.D. Ill. Nov. 15, 2017); *see also Jackson v. Cerpa*, 696 F.Supp.2d 962, 964 (N.D.Ill.2010) (The ICRA "was expressly intended to provide a state law remedy that was identical to the federal disparate impact canon.") (emphasis in original); *Cox v. Kisro*, No. 5-10-0045, 2011 WL 10500941, at *5 (Ill. App. Ct. Feb. 25, 2011) ("The Illinois Civil Rights Act creates a private right of action for disparate-impact-discrimination claims."). Accordingly, Plaintiffs' ICRA claims must also be dismissed with prejudice.

---

[8] ICRA contains a two-year statute of limitations. *See Brown v. Cook Cty.*, No. 17 C 8085, 2018 WL 3122174, at *16 (N.D. Ill. June 26, 2018) ("ICRA . . . expressly imposes a two-year statute of limitations on suits against a unit of state, county, or local government for a violation of the Act").

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants seek an Order of this Court dismissing Plaintiffs' Complaint with prejudice, awarding Defendants their fees and costs, and providing such further relief as the Court deems appropriate.

Dated: June 7, 2019                          Respectfully Submitted,

                                             **THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS**

                                             By:    s/ *Christopher B. Wilson*
                                                     One of Its Attorneys

                                                    Christopher B. Wilson
                                                    Jon R. Buck
                                                    Christopher Lepore
                                                    PERKINS COIE LLP
                                                    131 S. Dearborn; Suite 1700
                                                    Chicago, IL 60603
                                                    Tel: (312) 324-8400
                                                    Fax: (312) 324-9400
                                                    CWilson@perkinscoie.com
                                                    JBuck@perkinscoie.com
                                                    CLepore@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, certify that on June 7, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may also access this filing through the Court's ECF system.

By: s/ *Christopher B. Wilson*

## CERTIFICATE OF COMPLIANCE

Christopher B. Wilson, an attorney duly admitted to practice before the United States District Court of the Central District of Illinois, hereby certifies that the foregoing brief complies with Local Rule 7.1 of the U.S. District Court of the Central District of Illinois. The brief contains 6, 320 words, as counted by the word processing system used to prepare it.

By: *s/ Christopher B. Wilson*