E-FILED
Monday, 13 April, 2020  09:43:52 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

DERICK BROWN, ATIBA FLEMONS
and JEFFREY TAYLOR,

      On behalf of themselves and
      all others similarly situated,

      Plaintiffs,

    v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

      Defendant.

Case No. 2:19-cv-02020-CSB-EIL

The Hon. Colin Stirling Bruce
Magistrate Judge Eric I. Long

### DEFENDANT'S REPLY

Plaintiffs' 25-page Response neglects a critical and well-established legal distinction between *filed* and *unfiled* discovery materials. *See Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("While the public has a presumptive right to access discovery materials that are filed with the court, . . . the same is not true of materials produced during discovery but not filed with the court."). Overlooking that distinction, Plaintiffs misstate the applicable legal standard, cite a considerable volume of irrelevant case law, and fail to identify any cognizable interest for the Court to weigh on Plaintiffs' side of the ledger.

Meanwhile, Plaintiffs' alternative *proposal*, which gives Plaintiffs sole power over pre-disclosure redactions, is inadequate to protect confidentiality, unfair to the University, and fundamentally unworkable. The burdens Plaintiffs would impose on the University are particularly egregious in light of the fact that the University's Proposed Protective Order does not prejudice any legitimate interest of the Plaintiffs. Unfiled discovery materials deemed confidential may still be publicly *filed* by Plaintiffs under an agreed provision of the Proposed Protective Order. *See* Dkt. 24-1 ("Proposed Order"), at § 7.

## ARGUMENT

### 1. Plaintiffs apply the wrong legal standard.

The materials at issue in this Motion are not documents filed with the Court, but sensitive investigation and personnel files exchanged for the ostensible purpose of locating relevant, admissible evidence. Under these circumstances, to determine whether good cause exists to protect unfiled discovery materials such as these, the Court must "balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. Apr. 8, 2011). *Calhoun* is illustrative of the relatively relaxed and balanced good cause inquiry employed by courts in the Seventh Circuit when deciding whether to protect unfiled discovery materials. The *Calhoun* court upheld the confidentiality of unfiled discovery materials, finding that the defendant City of Chicago had "*arguably*" identified a "privacy interest," that there was "*some potential* for harassment or embarrassment," and that the opposing party failed to identify any reason that the confidential information should be made public besides "a general public interest in access to the records." *Id* at 423-24. (emphases added). The court observed that "[t]he discovery process is not designed to provide public access to the inner workings of the Chicago Police Department." *Id*. So too here. The only difference between this case and *Calhoun* is that the University has a definite, rather than arguable, privacy interest, and the potential harm to the University extends beyond individual embarrassment of employees to the University's ability to effectively investigate discrimination.

Plaintiffs, however, attempt to impose a far heavier legal standard here than the standard described above and applied in *Calhoun*. Plaintiffs erroneously assert that this Court cannot enter a protective order covering unfiled discovery materials unless the Court is convinced, *inter alia*, that "the disclosure of the information will result in a clearly defined and very serious injury." Dkt. 26-1, at 5 (citation omitted). This approach is wrong as a matter of law. Most of the decisions by courts in the Seventh Circuit cited by Plaintiffs in their discussion of the legal standard have

nothing to do with unfiled discovery materials.[1]  Plaintiffs appear unwilling to acknowledge the legal distinction between filed and unfiled discovery materials.  Indeed, in spite of clear Seventh Circuit precedent to the contrary, Plaintiffs argue that "a presumption of public access to discovery materials" ought to apply to unfiled discovery materials in this case.  Dkt. 26-1, at 6 (citation omitted).  No such presumption applies to *unfiled* discovery.  *See Bond*, 585 F.3d at 1066 ("[T]here is no constitutional or common-law right of public access to discovery materials exchanged by the parties but *not filed with the court*.") (emphasis added).

Plaintiffs cite two decisions by courts in the Seventh Circuit that address unfiled discovery materials, but one rejects a protective order for reasons wholly inapplicable to the Proposed Order,[2] and the other explicitly supports the University's position.[3]

**2. The balance of the Parties' interests decidedly favors the University.**

The purpose of liberal discovery is "assisting in the preparation of trial, or the settlement, of litigated disputes." *Seattle Times v. Rhinehart*, 467 U.S. 20, 34 (1984).  Plaintiffs have no legitimate interest in publicizing the University's confidential information to third parties at this

---

[1] The following citations are listed in the order in which they appear in the section of Plaintiffs' brief dealing with the applicable legal standard.  Dkt. 26-1, at 5-6.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (dealing with "a complete ban on all communications concerning the class action between the parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court."); *Shepard v. Humke*, IP 01-1103-C-H/K, 2003 WL 1702256, at *1 (S.D. Ind. Mar. 28, 2003) (rejecting a protective which would require both parties to *file under seal* any information designated as confidential by a party or witness based on a good faith belief that the information could cause harm); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (affirming the district court's denial of a motion to seal records underlying a settlement agreement while indicating that a "broad secrecy agreement that often accompanies discovery in order to expedite that process by avoiding document-by-document analysis" is "appropriate at the discovery stage."); *Felling v. Knight*, 211 F.R.D. 522 (S.D. Ind. 2003) (denying a motion to permanently seal videotaped depositions underlying a public settlement supervised by the court); *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999) (concerning a motion to keep documents filed with the court under seal).

[2] *See Homesite Ins. Co. of Midwest v. Electrolux Home Products, Inc.*, 1:11-CV-42, 2012 WL 90143, at *1-2 (N.D. Ind. Jan. 11, 2012) (rejecting a protective order that defined confidential information as any information designated as confidential in a "good faith" belief that it contains "confidential" information or "other information" that must be maintained in confidence to protect its business or commercial interest).

[3] In *Smith v. City of Chicago*, the court noted "that parties may properly agree amongst themselves to limit disclosure of unfiled discovery information to certain specified persons during the litigation and not to voluntarily disseminate such information to other persons." 04 C 2710, 2005 WL 3215572, at *3 (N.D. Ill. Oct. 31, 2005).

The court reasoned that such an agreement is appropriate because "only a small subset of all discovery is ever filed in the public court record or used during a court proceeding."  *Id*.  Far from endorsing Plaintiffs' position that unfiled discovery materials may only be kept confidential upon a showing of serious harm, the *Smith* court declared that "there is no need for court approval or intervention regarding such an agreement."  *Id*.

stage in the litigation.  The Plaintiffs' sole cited interest, "a demonstrable public interest in the materials," fails because it (a) is not an interest of the *Plaintiffs* related to preparing for trial or the settlement of the litigated disputes; and (b) is not, in any event, a legally cognizable interest—the public (let alone Plaintiffs) lacks standing to seek access to unfiled discovery materials.  *See Bond*, 585 F.3d at 1066 (rejecting for lack of standing an intervenor suit seeking access to unfiled discovery materials).

Meanwhile, Plaintiffs' briefing is notably quiet regarding the University's concern—instantiated in University policy—that publicly disclosing confidential materials gathered and created by the University's Office of Access and Equity ("OAE") while investigating complaints of discrimination will likely chill cooperation by employees going forward, which will in turn impair the University's ability to combat discrimination in the workforce.  Against this interest Plaintiffs can only mount the bizarre argument that if the Court acknowledges the validity of the University's interest, it would have the following consequence: "an employer need only tell its employees that it had a policy of maintaining confidentiality concerning *all* company documents, with the result that a protective order would be entered as a matter of course, defeating the individualized good cause requirement."  Dkt. 26-1, at 20.  To state the argument is enough to refute it.  The University does not argue that these documents should be protected because the University has a policy, but rather that the University has a policy because these documents should be protected.  Unlike Plaintiffs, the University trusts the Court would not feel compelled, after granting the University's motion for a protective order, to adopt all policy-based protective orders as a matter of logical consistency.[4]  After all, deciding good cause depends on "the facts and circumstances of each specific case."  *Calhoun*, 273 F.R.D. at 422.

### 3. Plaintiffs alternative proposal is inadequate, unfair, and unworkable.

Finally, Plaintiffs' proposal to redact, document-by-document, "names, addresses, phone

---

[4] To satisfy Plaintiffs' concern that the University's proposed definition of confidential information includes materials covered under *any* applicable policy, *see* Dkt. 26-1, at 21 n.12, the University stipulates that the only applicable policies are those the University cited in its opening brief.  Filed at Dkt. 24-4, 24-5.

numbers, dates of birth, or other personally-identifying information," Dkt. 26-1, at 4, is inadequate, unfair to the University, and unworkable.[5]

*Inadequacy*.    First, the University's confidentiality will not be protected by merely redacting personal identifying information.  As the University pointed out in its opening brief, redaction would be insufficient to anonymize testimony provided to the OAE because discrete facts involved in an investigation, along with facts about a given department, will often reveal the identities of the parties involved.  *See* Dkt. 24-2, at 8.  This problem is compounded within departments and units with relatively few African-American employees.[6]

*Unfairness*.  Plaintiffs' proposal would vest Plaintiffs with unfettered discretion to make redaction decisions on behalf of the University.  Plaintiffs' proposal would not even afford the University an opportunity to object prior to public disclosure.  Plaintiffs propose instead that, *after* public disclosure, "Defendant is free to seek modification of the Order" though only if the University "obtain[s] a declaration from the individual(s) if that or those employees exhibited concern about the allegations in general being made public."  Dkt. 26-1, at 23.  This is obviously no safeguard at all.

*Plaintiffs' Unworkable Counterproposal*.  Lastly, Plaintiffs' proposal to permit document-by-document redaction would likely grind the discovery process to a halt.  An adequate pre-disclosure consultation mechanism for the University would too often result in repeated litigation before this Court over the adequacy of specific redactions.  Such a predictable logjam in discovery is wholly unnecessary.  The University's Proposed Order has *agreed* provisions protecting Plaintiffs' right to argue that relevant confidential materials should be *filed* publicly.  The Parties should be expeditiously exchanging relevant documents, not endlessly litigating the proper redaction of unfiled discovery materials.

---

[5] It is worth noting that, under Plaintiffs' alternative proposal, Plaintiffs' counsel indicates an intention to use the University's unfiled discovery materials to, among other things, contact nonparties to seek their consent to publicize their information.  Dkt. 26-1, at 4 n.4.

[6] Plaintiffs respond that they are unconvinced any such department exists.  Dkt. 26-1, at 23.  But Plaintiffs' First Amended Complaint refers repeatedly to multiple departments with one or only a few African-American employees. *See* Dkt. 4, at ¶¶ 71, 88, 125, 164, 295.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant, the Board of Trustees of the University of Illinois respectfully moves the Court to adopt its Proposed Order as submitted.

Dated:  April 10, 2020

Respectfully Submitted,

**THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS**

By: */s/ Christopher B. Wilson*
One of Their Attorneys

Christopher B. Wilson
Jonathan R. Buck
James A. Kilcup
PERKINS COIE LLP
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603-5559
Tel:  (312) 324-8400
Fax:  (312) 324-9400
CWilson@perkinscoie.com
JBuck@perkinscoie.com
JKilcup@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, certify that on April 10, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may also access this filing through the Court's ECF system.

By: */s/ Christopher B. Wilson*