E-FILED
Friday, 09 December, 2022  03:14:19 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

DERICK BROWN, ATIBA FLEMONS, & )
JEFFREY TAYLOR, *on behalf of* )
*themselves and others similarly situated,* )
                     )
      Plaintiffs,              )      Case No.  2:19-cv-02020
                     )
         v.                   )
                     )
THE BOARD OF TRUSTEES OF )
THE UNIVERSITY OF ILLINOIS, )
                     )
      Defendant.           )

## ORDER & OPINION

This matter is before the Court on Plaintiffs' Motion to Certify Class (doc. 58). The Motion has been fully briefed and is ripe for review. For the following reasons, the Motion is denied.

### BACKGROUND

Plaintiffs Derick Brown, Atiba Flemons, and Jeffrey Taylor are three Black employees who currently work at Defendant's Urbana-Champaign campus (UIUC or the University). They charge Defendant with discrimination against Black employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and have filed this putative class action lawsuit on behalf of themselves and their colleagues to seek redress.

According to Plaintiffs, the University's Nondiscrimination Policy (NDP) is discriminatory and the University's Office of Access and Equity (OAE)—the unit tasked with investigating alleged violations of the NDP—has engaged in a pattern

and practice of discrimination by systematically failing to promptly evaluate and ameliorate NDP complaints arising from alleged race-based misconduct. Regarding the former claim, Plaintiffs allege the NDP creates a more demanding standard of proof than is appropriate under Title VII in addressing complaints of race-based misconduct without the protections and benefits afforded to litigants formally pursuing a Title VII claim in court. And regarding the latter, Plaintiffs allege the "OAE's standard operating procedure is to guarantee a finding that a violation of the NDP has not occurred, thus perpetuating racial hostility." (Doc. 59 at 9).[1] To maintain this "inexorable zero," Plaintiffs claim OAE staff members "refer draft investigatory findings for Legal Review only where there is a preliminary recommendation that a violation of the NDP is indicated, ensuring that UIUC's legal department will override the preliminary determination." (Doc. 59 at 10). Plaintiffs further claim the "OAE maintains a practice of nonenforcement by purposefully disregarding provisions of the NDP aimed at preventing harassment, and by taking no measures to mete out discipline, mandate reporting of racial harassment, or mandate training on the NDP for all employees."[2] (Doc. 59 at 10). To remedy these claims, Plaintiffs seek injunctive relief directing Defendant to overhaul the NDP and its complaint procedure. (*See* doc. 59 at 72).

---

[1] The Court's pinpoint citations are to the page numbers generated by the Court's CMECF system.

[2] Defendants refute this claim, pointing to evidence that the OAE does not have authority to discipline. (Doc. 59-43 at 7–10). Rather, disciplinary actions are carried out by the University's various human resources departments. (Doc. 59-43 at 7–10).

2

Plaintiffs now seek certification of a class comprising

> [a]ll individuals identifying as Black and/or African American who are currently employed at UIUC, or who have been employed by UIUC at any point since January 1, 2014, and who have not held a supervisory position within System Human Resources, Illinois Human Resources, campus unit offices for human resources, or the Office of Access and Equity at any point since January 1, 2014.

(Doc. 59 at 49).

## LEGAL STANDARD

"The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). Firstly, the proposed class must be "sufficiently definite that its members are ascertainable." *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 864 (7th Cir. 2018) (internal quotation marks omitted). Secondly, the movant(s) must comply with Federal Rule of Civil Procedure 23, which requires satisfaction of "all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the general categories of Rule 23(b)." *Orr*, 953 F.3d at 497.

## DISCUSSION

The parties devote many pages to arguing over the theory under which Plaintiffs intend to proceed in this putative class action lawsuit and the merits thereof. Early on, Plaintiffs indicated they intended to proceed based on theories of retaliation and hostile work environment. (Text Order dated Aug. 8, 2019). Now, Plaintiffs have seemingly abandoned the hostile-work-environment theory and are instead pursuing a theory that Defendant engaged in a pattern or practice of

discrimination in its promulgation of the NDP and evaluation of complaints thereunder.

Defendant claims waiver, asserting this shift circumvents Judge Bruce's Text Order on Defendant's Motion to Dismiss, which noted: "Plaintiffs, in their Response 18 at page 1, confirmed that they are not pursuing any disparate treatment claims, and are pursuing only hostile work environment and retaliation claims under Title VII." (Text Order dated Aug. 8, 2019). The Court disagrees with Defendant's contention and accepts Plaintiffs' explanation: Plaintiffs waived their specific, individual claims of disparate treatment asserted in Counts V and VI of the Amended Complaint, not the overarching claim related to the NDP and its complaint procedure, couched in Count I.[3] Indeed, both Plaintiffs' Amended Complaint and Response to Defendant's Motion to Dismiss discuss at length their theory that Defendant engaged in a pattern or practice of discrimination in promulgating the NDP and evaluating complaints thereunder. Defendant nevertheless did not challenge that theory at the dismissal stage or elsewhere in this litigation. Thus, the Court will proceed herein on the understanding that Plaintiffs' class claim is limited to their challenge of Defendant's NDP and its complaint procedure.

---

[3] While Count I is labeled a hostile-work-environment claim, the Court is not "bound by names and labels placed on a complaint by" Plaintiffs. *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 987 (7th Cir. 2000). In addition to explicitly alleging a hostile work environment, Count I also challenges the validity of Defendant's "policies, practices, and/or procedures." (Doc. 4 at 82).

I.        **Plaintiffs Cannot Satisfy the Rule 23(a) Prerequisites**

Of the Rule 23(a) requirements, Defendant only challenges commonality and typicality. The Court accepts this implicit concession that Plaintiffs' proposal meets the requirements of numerosity and fair and adequate representation by the named parties and finds Plaintiffs' Memorandum in support of their Motion for Class Certification demonstrates by a preponderance of the evidence that these elements are satisfied. The same cannot be said for the requirements of commonality and typicality.

A.        *Plaintiffs Have Not Satisfied the Commonality Requirement*

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[S]uperficial common questions— like whether each class member shares a characteristic or 'suffered a violation of the same provision of law'—are not enough." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 273 (N.D. Ill. 2019) (quoting *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012). Instead, to satisfy this requirement, a plaintiff "must assert a common injury that is 'capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' " *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

In a case such as this, where Plaintiffs seek to "bring otherwise highly individualized claims as a class, the class must establish systemic violations or an illegal policy." *Van*, 332 F.R.D. at 273 (citing *Jamie S.*, 668 F.3d at 497). " 'If, to make a prima facie showing on a given question, the members of a proposed class will need

to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.' " *Id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (holding common questions exist where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." (citation omitted)).

The operative question is thus whether Plaintiffs have submitted sufficient evidence to conclude at this stage Defendant has engaged in systemic Title VII violations or enforced an illegal policy. Plaintiffs, of course, answer in the affirmative and assert the following five questions pertinent to their claim meet the commonality requirement.

<u>One</u>: Whether OAE has a policy or practice of never issuing a finding of a violation of the NDP;

<u>Two</u>: Whether OAE has a policy or practice of referring to UIUC's Legal Department for review and reversal only those draft preliminary investigation reports that indicate a violation of the NDP;

<u>Three</u>: Whether the provisions of the NDP itself are more demanding than those of Title VII that they effectively prohibit any finding that alleged racial harassment will be found to have violated the NDP;

<u>Four</u>: Whether OAE's definition of "harassment" as applied to complaints of racial harassment demands more proof than the definition OAE applies to complaints of sexual harassment, further evidence that UIUC is discriminating "because of" race; and

<u>Five</u>: Whether OAE has a practice of nonenforcement of the NDP with respect to reporting racial harassment, training employees on what

> constitutes racial harassment, and meting out discipline that, in effect, OAE tolerates racial harassment.

(Doc. 59 at 53–54).

As these questions suggest, Plaintiffs' theory is that Defendant's NDP violates Title VII and its complaint procedure, as carried out by the OAE, constitutes a pattern or practice of intentional discrimination in violation of Title VII. Pattern-or-practice claims most often arise in the context of hiring practices. *See E.E.O.C. v. Int'l Profit Assocs., Inc.*, 2007 WL 3120069, at *2 (N.D. Ill. Oct. 23, 2007). "For example, '[i]f an employer has an established policy of making employment decisions with racial animus in violation of Title VII, it is likely that any specific employment decision also violates Title VII, and if a particular decision was not discriminatory, the employer is in the best position to show why." *Van*, 332 F.R.D. at 274 (quoting *Int'l Profit Assocs., Inc.*, 2007 WL 3120069, at *2). Such claims thus "require a 'showing that an employer regularly and purposefully discriminates against a protected group.' " *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716-17 (7th Cir. 2012) (citing *Council 31, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992)). To prevail under this theory, "Plaintiffs must prove that discrimination 'was the company's standard operating procedure—the regular rather than the unusual practice.' " *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, (1977)).

However, as Judge Dow observed in *Van*, "it is not clear to the Court that such a claim can be brought in the context of this case." 332 F.R.D. at 274. The *Van* plaintiffs' claim is remarkably similar to that asserted here:

> Plaintiffs claim that Defendant has maintained a policy of failing to take prompt remedial action in response to credible allegations of

7

harassment. . . . Specifically, Plaintiffs contend that Defendant as a rule has allowed known harassers to remain in the workplace, failed to discipline harassers despite the harassment being witnessed by supervisors, threatened female complainants with termination or otherwise reprimanded female complainants, assigned less desirable tasks to women who did not submit to sexual advances, among other conduct.

*Id.* In finding a lack of commonality as to this pattern-or-practice claim, Judge Dow reasoned:

Even assuming these facts to be true, however, a finding that an employer had a pattern or practice of tolerating . . . harassment in violation of Title VII does not necessarily establish that an individual claimant was exposed to harassment or that the harassment an individual claimant suffered violates Title VII. The *Teamsters* pattern-or-practice framework can assist a court's analysis of whether a defendant has engaged in a pattern or practice of discrimination prohibited under Title VII, but it is Title VII itself that defines the scope of prohibited discrimination and sets the substantive boundaries within which the method of proof must operate. In other words, adopting the *Teamsters* method of proof to adjudicate plaintiffs' claims does not obviate the need to consider the * * * statutory elements of the specific cause of action pled.

*Id.* at 274–75 (internal quotation marks and citations omitted).

Similarly, even if Plaintiffs are correct in their assertion the NDP and its complaint procedure are problematic, such a finding has no bearing on whether *anyone* suffered a Title VII violation. Plaintiffs have put the cart before the horse. Title VII regulates conduct;[4] it does not regulate or even mandate organizational policies prohibiting conduct prohibited by Title VII, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998) ("[P]roof that an employer had promulgated an

---

[4] Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

antiharassment policy with [a] complaint procedure is not necessary in every instance as a matter of law, [but] the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case *when litigating the first element of the defense.*"). By challenging the NDP and its complaint procedure, Plaintiffs are effectively challenging the first element of Defendant's affirmative defense[5]—not asserting a claim cognizable under Title VII. Indeed, the policy itself is race-neutral (*see* doc. 59-1), and Plaintiffs' more sinister claim—that the OAE had an unwritten policy to never find a violation of the NDP—is likewise race-neutral.[6] This is simply unlike cases where there was a policy, written or by practice, to never hire or promote people of color, which are clearly race-based policies, *see, e.g.*, *Teamsters*, 431 U.S. at 324.

Because neither the NDP nor its complaint procedure constitute a patent violation of Title VII, Plaintiffs' putative common questions have no bearing on their and the putative class members' prima facie claims under Title VII and thus cannot serve as common questions in that regard. This, however, raises an additional concern that permeates the Rule 23 analysis: Plaintiffs disclaim "harassment common to the class as a whole that has resulted in an overall hostile environment."

---

[5] Under *Ellerth* and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), an employer "is entitled to an affirmative defense against liability if it can show (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the claimant failed to take advantage of any preventive or corrective opportunities provided by the University to otherwise avoid harm." *Hardy v. Univ. of Illinois at Chicago*, 328 F.3d 361, 364 (7th Cir. 2003).

[6] The Court recognizes the possibility that a disparate impact claim could potentially arise from such a policy, but Plaintiffs have not pursued a disparate impact claim herein.

9

(Doc. 69-1 at 5). Because the failure to have an adequate antiharassment policy and complaint procedure is not itself a violation of Title VII, it appears highly unlikely that each and every member of the putative class suffered a Title VII violation in light of Plaintiffs' disclaimer. The proposed class definition, therefore, seems to be overbroad in that it includes individuals with no colorable Title VII claim.

That said, the putative common questions do touch on Defendant's affirmative defense to claims of Title VII violations. But even assuming commonality may arise from questions solely pertaining to an affirmative defense rather than a plaintiff's prima facie case, *see Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 845 (7th Cir. 2022) (contemplating whether common questions pertaining to an affirmative defense predominated), the Court remains skeptical of the notion that the answers to Plaintiffs' putative common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," *Lacy*, 897 F.3d at 865.

Recall that Plaintiffs seek to certify a class comprising

> [a]ll individuals identifying as Black and/or African American who are currently employed at UIUC, or who have been employed by UIUC at any point since January 1, 2014, and who have not held a supervisory position within System Human Resources, Illinois Human Resources, campus unit offices for human resources, or the Office of Access and Equity at any point since January 1, 2014.

(Doc. 59 at 49). Plaintiffs claim the number of University employees identifying as black or African American was nearly 900 in 2015; consistent with Plaintiffs' assertion "that number is consistent with the range of employees identifying as Black in the years after 2015" (doc. 59 at 50), the Court will presume for the purpose of this Order the putative class numbers approximately 900 individuals. Yet, Plaintiffs also

allege the OAE evaluated only 75[7] or so NDP complaints during the class period, of which approximately 80% (approximately 60) were made by employees who identified as Black or African American. (Doc. 59 at 12, 55, 58–59).

This comparatively minute number of putative class members interacting with the OAE's NDP complaint procedure raises alarm bells. Plaintiff has not established the OAE's NDP complaint procedure is the only way by which a Title VII claimant may "exhaust" her claim so as to avoid the consequences of the *Ellerth/Faragher* defense. Defendant points to evidence demonstrating the OAE is not the only unit that may evaluate allegations of race-based misconduct; in fact, it is the University's various human resources departments that are authorized to take corrective action for such claims—the OAE has no such authority. (Doc. 68-1 at 13–14 (citing doc. 59-43 at 7–10); *see also* doc. 63-7). Given participation in the OAE's NDP complaint procedure is purportedly voluntary (*see* doc. 68-1 at 14), it stands to reason that an aggrieved employee may overcome the *Ellerth/Faragher* defense by going straight to the unit holding the power to remedy misconduct: the applicable human resources department. To be clear, this is not a decision on the merits of any aspect of Defendant's potential *Ellerth/Faragher* defense; it is merely an observation that Plaintiffs have not proven by a preponderance of the evidence that aggrieved employees must go through the OAE to seek internal redress for alleged race-based

---

[7] The Court is aware that Defendant disputes this, arguing "only a relatively small number of [NDP] complaints proceed through the investigative process to a final report" and the OAE evaluated more than 75 complaints but many of them were withdrawn or resolved through informal mediation. (Doc. 68-1 at 13).

misconduct. If employees are not required to go through the OAE and may instead seek redress from other units within the University, then questions pertaining to the OAE's NDP and its complaint procedure are not common in the context of Defendant's affirmative defense even among the putative class members with colorable Title VII claims.

In sum, the more the Court digs into Plaintiff's theory of the case, the more Plaintiffs' foundation crumbles. *Ellerth* holds Defendant was under no legal obligation pursuant to Title VII to promulgate antiharassment policies and complaint procedures, which calls into serious question the propriety of the very broad proposed class definition. Plaintiffs' claim instead attacks the first element of Defendant's *Ellerth/Faragher* defense. But this theory suffers a fatal flaw: Plaintiffs have not demonstrated the OAE's NDP complaint procedure is the *only* avenue to avoid the application of that defense. If, as the Court suspects, employees can and do report race-based misconduct directly to University officials or units other than the OAE, the propriety and efficacy of the NDP and its complaint procedure do not present issues common to such individuals. For these reasons, the Court finds Plaintiffs have failed to meet their burden to prove commonality such that the answers to their putative common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke," *Lacy*, 897 F.3d at 865.

B.    *Plaintiffs Have Not Proven Their Claims are Typical of the Class*

The "commonality and typicality requirements . . . tend to merge." *Wal-Mart,* 564 U.S. at 349 n.4 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). However, the two differ in that "the commonality inquiry focuses on what

12

characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 606 (7th Cir. 2021) (quoting Newberg on Class Actions § 3:31). "Typicality is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Id.* (internal quotation marks omitted). Specifically, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Lacy*, 897 F.3d at 866 (internal quotation marks omitted and alteration in original). "The logic behind the typicality requirement 'is that a class representative will adequately pursue her own claims, and if those claims are "typical" of those of the rest of the class, then her pursuit of her own interest will necessarily benefit the class as well.' " *Howard*, 989 F.3d at 605 (quoting Newberg on Class Actions § 3:28).

Plaintiffs' claims are not typical of the putative class members' claims. The named Plaintiffs and the two class exemplars represent five of the approximately 60 NDP complaints asserting race-based misconduct evaluated by the OAE during the class period. As stated above, the number of NDP complaints filed in the relevant time period represents an infinitesimal fraction of the putative class, meaning the vast majority of the putative class members were not subject to the same practice or conduct that comprises the gravamen of Plaintiffs' and the class exemplars' claims: the OAE's NDP and complaint procedure. In the Court's estimation, the experiences of the Plaintiffs and putative class members range from (1) those who experienced no

racial discrimination or harassment to (2) those who experienced racial discrimination or harassment but did not report it to (3) those who experienced racial discrimination or harassment but reported it to a University official or unit other than the OAE to (4) those who experienced racial discrimination or harassment and reported it to the OAE. As these experiences vary wildly it cannot be said that Plaintiffs' experience is typical of the entire class; rather, it appears Plaintiffs' and the exemplars' experiences are an extreme minority. For these reasons and those discussed above in the commonality analysis, Plaintiffs have failed to adequately prove typicality.

## II.    The Court does not Consider the Arguments Relating to Rule 23(b), (c)

Because Plaintiffs have failed to meet their burden to prove commonality and typicality, the Court does not consider the parties' arguments relating to Rule 23(b)(2) or (c)(4).

## CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Class Certification (doc. 58) is DENIED. This matter is referred to Magistrate Judge Long for a case management hearing to establish the procedures moving forward.


SO ORDERED.

Entered this 9th day of December 2022.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
