E-FILED
Monday, 03 April, 2023  08:36:15 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS

DERICK BROWN, ATIBA FLEMONS, and
JEFFREY TAYLOR,

                 Plaintiffs,

    v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

                 Defendant.

Case No. 2:19-cv-02020-JBM-EIL

The Honorable Joe Billy McDade

Magistrate Judge Eric I. Long

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ATIBA FLEMONS' CLAIMS

Dated: April 3, 2023

Respectfully Submitted,

**DEFENDANT THE UNIVERSITY OF ILLINOIS**

By:   */s/ Christopher B. Wilson*
      One of Its Attorneys

Christopher B. Wilson
Jonathan R. Buck
PERKINS COIE LLP
110 North Wacker, Suite 3400
Chicago, IL 60606-1511
Tel: (312) 324-8400
Fax: (312) 324-9400
cwilson@perkinscoie.com
jbuck@perkinscoie.com

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ....................................................... 1

    A.  Flemons' employment with the University........................................ 1

    B.  The University thoroughly investigates and concludes Flemons' alleged
    incidents with his supervisor were not race-based and did not violate the
    NDP.................................................................................. 2

    C.  The conduct Flemons alleges after the OAE investigation is race-neutral
    and cannot support a Title VII violation. ...................................... 3

    D.  A co-worker's harassment complaint against Flemons resulted in negative
    findings against Flemons. .................................................... 4

    E.  Flemons' other alleged instances of supposed racial harassment were
    either not related to his employment or were race neutral.................... 5

III.  ARGUMENT ................................................................... 6

    A.  Standard of Review.......................................................... 6

    B.  Plaintiff's Hostile Work Environment Claim Fails. .......................... 7

        1.  Most of the incidents underlying Flemons' hostile work
        environment claim are time barred. ...................................... 7

        2.  Flemons was not subjected to a hostile work environment. ................. 8

    C.  Flemons' Retaliation Claim Also Fails as a Matter of Law........................... 11

        1.  Most of the allegations underlying Flemons' retaliation claim are
        time barred. ............................................................. 11

        2.  Flemons was not subject to a material, adverse employment action. ... 12

        3.  Flemons cannot connect any alleged adverse action to protected
        activity.................................................................. 13

IV.  CONCLUSION................................................................. 15

CERTIFICATE OF SERVICE ...................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrego v. Wilkie*,
907 F.3d 1004 (7th Cir. 2018) ...........................................................9, 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................6

*Arnold v. Visiontek Prod.*,
LLC, 748 F. App'x 59 (7th Cir. 2019)...................................................14

*Atanus v. Perry*,
520 F.3d 662 (7th Cir. 2008) ..............................................................9

*Baker v. Blue Sky Casino, LLC*,
No. 16CV00019, 2018 WL 1566806 (S.D. Ind. Mar. 30, 2018) ...........10

*Bless v. Cook Cnty. Sheriff's Off.*,
9 F. 4th 565 (7th Cir. 2021) ...............................................................11

*Boss v. Castro*,
816 F.3d 910 (7th Cir. 2016) ..............................................................7

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)..............................................................................12

*Carter v. Pension Plan Of A. Finkl & Sons Co. For Eligible Off. Emps.*,
654 F.3d 719 (7th Cir. 2011) ..............................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).............................................................................6

*Cisneros v. City of Chi.*,
No. 00 C 8059, 2002 WL 31356404 (N.D. Ill. Oct. 17, 2002)..............13

*Cung Hnin v. TOA (USA), LLC*,
751 F.3d 499 (7th Cir. 2014) ..............................................................11

*Dorsey v. Morgan Stanley*,
507 F.3d 624 (7th Cir. 2007) ..............................................................6

*E.E.O.C. v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ..............................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ellis v. CCA of Tenn. LLC,*
    650 F.3d 640 (7th Cir. 2011) ..............................................................10

*Ferguson v. Med. Coll. of Wis.,*
    471 F. Supp. 2d 901 (E.D. Wis. 2007).................................................10

*Ford v. Marion Cnty. Sheriff's Off.,*
    942 F.3d 839 (7th Cir. 2019) ................................................................8

*Harper v. C.R. England, Inc.,*
    687 F.3d 297 (7th Cir. 2012) ..............................................................12

*Hypolite v. Kankakee Cnty. Hous. Auth.,*
    No. 05-2274, 2007 WL 399021 (C.D. Ill. Feb. 1, 2007) ........................9

*Igasaki v. Ill. Dep't of Fin. & Pro. Regul.,*
    988 F.3d 948 (7th Cir. 2021) ..............................................11, 13, 14

*Karriem v. Gen. Servs. Admin.,*
    No. 17 C 2572, 2018 WL 6179089 (N.D. Ill. Nov. 27, 2018)................13

*Khungar v. Access Cmty. Health Network,*
    985 F.3d 565 (7th Cir. 2021) ..............................................................14

*Kidwell v. Eisenhauer,*
    679 F.3d 957 (7th Cir. 2012) ..............................................................14

*Lesiv v. Ill. Cent. R.R. Co.,*
    39 F.4th 903 (7th Cir. 2022) ..........................................................12, 14

*Lilly v. Roadway Express, Inc.,*
    6 F. App'x 358 (7th Cir. 2001) ............................................................10

*Lucas v. Chi. Transit Auth.,*
    367 F.3d 714 (7th Cir. 2004) ................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)..............................................................................6

*Mercer v. Cook Cnty,*
    527 F.. A'ppx 515 (7th Cir. 2013) ......................................................10

*Milligan-Grimstad v. Stanley,*
    877 F.3d 705 (7th Cir. 2017) ................................................................8

160883542.1

**TABLE OF AUTHORITIES**
(continued)

*Moreland v. Nielsen,*
    900 F.3d 504 (7th Cir. 2018) ................................................................14

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ..........................................................................12

*Noble v. Ne. Ill. Reg'l Commuter R.R. Corp.,*
    130 F. Supp. 3d 1166 (N.D. Ill. 2015) ..................................................13

*Oenning v. Caremark, Inc.,*
    No. 01 C 462, 2001 WL 1230622 (N.D. Ill. Oct. 11, 2001) .....................8

*Ortiz v. Werner Enters., Inc.,*
    834 F.3d 760 (7th Cir. 2016) ...............................................................11

*Paschall v. Tube Processing Corp.,*
    28 F.4th 805 (7th Cir. 2022) ................................................................10

*Rogers v. DeJoy,*
    No. 19 C 5389, 2021 WL 4318083 (N.D. Ill. Sept. 23, 2021)................14

*Ross v. Univ. of Chi.,*
    No. 18- CV-4200, 2018 WL 6448464 (N.D. Ill. Dec. 10, 2018)..............14

*Rozumalski v. W.F. Baird & Associates, Ltd.,*
    937 F.3d 919 (7th Cir. 2019) ...............................................................15

*Russell v. Bd. of Trs. of Univ. of Ill. at Chi.,*
    243 F.3d 336 (7th Cir. 2001) ...............................................................10

*Sanford v. Walgreen Co.,*
    No. 08-CV- 6325, 2009 WL 3152795 (N.D. Ill. Sept. 23, 2009) .............7

*Scruggs v. Garst Seed Co.,*
    587 F.3d 832 (7th Cir. 2009) .................................................................8

*Straub v. Jewel Food Stores, Inc.,*
    No. 17 C 6401, 2018 WL 4512060 (N.D. Ill. Sept. 20, 2018)................14

*Stutler v. Ill. Dep't of Corr.,*
    263 F.3d 698 (7th Cir. 2001) ...............................................................12

*Swyear v. Fare Foods Corp.,*
    911 F.3d 874 (7th Cir. 2018) .................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Thompson v. Mem'l Hosp. of Carbondale,*
   625 F.3d 394 (7th Cir. 2010) ...................................................................................12

*Tri-Gen Inc. v. Int'l Un. of Oper. Engineers, Local 150, AFL-CIO,*
   1024, 1030 (7th Cir. 2006)........................................................................................6

*Triplett v. Starbucks Coffee,*
   No. 10 C 5215, 2011 WL 3165576 (N.D. Ill. July 26, 2011) ...................................9

*Whittaker v. N. Ill. Univ.,*
   424 F.3d 640 (7th Cir. 2005) ...................................................................................12

*Williams v. Waste Mgmt. of Ill., Inc.,*
   361 F.3d 1021 (7th Cir. 2004) ...................................................................................7

*Winters v. Hamos,*
   No. 16-CV-10777, 2018 WL 3458266 (N.D. Ill. July 18, 2018)................................9

*Wyninger v. New Venture Gear, Inc.,*
   361 F.3d 965 (7th Cir. 2004) ...................................................................................13

*Yancick v. Hanna Steel Corp.,*
   653 F.3d 532 (7th Cir. 2011) ...................................................................................10

*Zayas v. Rockford Mem'l Hosp.,*
   740 F.3d 1154 (7th Cir. 2014) ...................................................................................9

*Zerante v. DeLuca,*
   555 F.3d 582 (7th Cir. 2009) .....................................................................................6

**STATUTES**

775 Ill. Comp. Stat.  5/7A-102(A)(1) ...........................................................................7

**RULES**

Fed R. Civ. P. 56(a) .......................................................................................................6

Local Rule 7.1(D)(1)(b)...................................................................................................1

160883542.1

## I.      INTRODUCTION

Plaintiff Atiba Flemons' hostile work environment claim against the University of Illinois Urbana-Champaign (the "University") rests on only two timely allegations of racial harassment: (1) in 2019, a supervisor allegedly questioned Flemons more than his white-co-workers about the whereabouts of a vacuum; and (2) in 2017, Flemons allegedly observed two vehicles with Confederate paraphernalia in parking lots reserved for University personnel. Neither of these allegations can establish a hostile work environment claim. The remainder of Flemons' allegations regarding alleged racial harassment occurred years before his EEOC complaint and are time-barred. Likewise, Flemons' retaliation claim fails because his underlying allegations are largely untimely and Flemons has not been subject to any material adverse employment action. Accordingly, his claims for hostile work environment (Count I) and retaliation (Count III) under Title VII fail as a matter of law.

## II.      FACTUAL BACKGROUND[1]

### A.      Flemons' employment with the University.

Atiba Flemons is a brick mason in the University's Facilities and Services ("F&S") Department. (Defendant's Local Rule 7.1(D) Statement of Undisputed Material Facts ("SOF") ¶ 65).[2] At the start of his employment, Flemons received a handbook that contained the University's policies and procedures for addressing discrimination and harassment. (*Id.* ¶ 66). Additionally, all employees receive an annual email with the University's Non-Discrimination Policy ("NDP") and take annual Title IX training. (*Id.* ¶ 67).

Flemons was initially hired in 2008 and laid off in 2009. (*Id.* ¶ 65). He was hired again in 2011 and continues to work for the University. (*Id.*). During all relevant periods, Flemons has

---

[1] The University accepts these facts as true for purposes of this Motion but reserves the right to contest any facts should this Motion be denied.

[2] Given the number of undisputed material facts common to all Plaintiffs, the University has filed one Statement of Undisputed Material Facts that applies to all three Motions for Summary Judgment. In this Memorandum, the University identifies the material facts applicable to Flemons, per Local Rule 7(D)(1)(b).

reported to supervising foreman Bruce Rodgers, who is white. (*Id.* ¶ 68). Flemons now claims Rodgers volunteered Flemons to be laid off in 2009. (*Id.* ¶ 69). However, when he was laid off, Flemons was the "least senior Brickmason." (*Id.*). The University's standard practice dictates the last employees hired are the first ones laid off, as the University explained in a letter at the time to Flemons and as Flemons acknowledged during his deposition. (*Id.*). Flemons did not report his suspicion about the layoff process being racially motivated to human resources or the Office for Access and Equity ("OAE") until 2012, roughly three years after he was initially laid off. (*Id.* ¶ 68).[3]

**B.   The University thoroughly investigates and concludes Flemons' alleged incidents with his supervisor were not race-based and did not violate the NDP.**

In April 2012, Flemons alleges that he and Rodgers had an argument before attending a retirement party for another employee. (*Id.* ¶ 71). Flemons was prepared to attend the party when Rodgers, who Flemons said forgot about the party, allegedly ordered Flemons to get into Rodgers' van so they could continue working. (*Id.*). The pair exchanged obscenities. (*Id.*). Flemons eventually got into the van, and Flemons and Rodgers drove to the retirement party. (*Id.*).

After this incident, Flemons requested OAE engage him and Rodgers in a mediation. (*Id.* ¶ 72). After the mediation, on July 31, 2012, Flemons filed a complaint with OAE that requested a formal investigation into Rodgers' alleged racial harassment. (*Id.* ¶ 73).  In his OAE complaint, Flemons alleged for the first time:

- In 2008, when Flemons was first hired, Rodgers commented about Flemons' supposed inability to follow instructions and generally held him to a higher standard than his white co-workers. (*Id.* ¶¶ 74, 75).
- Also in 2008, Rodgers allegedly said the University forced him to hire Flemons. (*Id.* ¶ 75).
- At various times, Rodgers critiqued Flemons' work, highlighted his mistakes in front of other co-workers, and used foul language with him. (*Id.*).
- On one occasion, Rodgers allegedly called Flemons a "big, black guy." (*Id.*).

---

[3] During the relevant period of this litigation, OAE changed its name from the Office of Diversity, Equity and Access ("ODEA") and some of the documents and exhibits refer to that earlier title. For convenience, the office is referred to as OAE throughout.

OAE investigated Flemons' claims, including meeting with Flemons, Rodgers, and several other witnesses. (*Id.* ¶ 76). In speaking with OAE, Rodgers explained that his comments about Flemons not following instructions were not intended to tear him down and that he never meant to suggest anything negative about Flemons' hire. (*Id.* ¶ 77). Rodgers denied Flemons' assertions that he has directed inappropriate or foul language at Flemons. (*Id.*). In regard to critiquing Flemons' work, Rodgers acknowledged that he has very high standards for the brick masons and has a tendency to micromanage but did not intend to single out Flemons. (*Id.*).

On January 4, 2014, OAE issued a final report finding that the evidence did not support Flemons' allegations and that, by a preponderance of the evidence, Rodgers did not engage in racial harassment. (*Id.* ¶ 78). OAE found many of Flemons' white coworkers experienced similar treatment as Flemons. (*Id.* ¶ 80). The co-workers said they also were subject to similar mean-spirited and inappropriate comments, yelling, and what they felt was unfair treatment. (*Id.*). They also said Rodgers micromanages and has unrealistic work expectations. (*Id.*). Flemons has acknowledged that Rodgers was a poor manager for all employees, not just him. (*Id.*). Since white employees also reported similar concerns, OAE was not able to determine by a preponderance of the evidence that Flemons was treated differently based on his race. (*Id.*). In its report, OAE recommended Rodgers receive additional supervision and training. (*Id.* ¶ 81).

## C.     The conduct Flemons alleges after the OAE investigation is race-neutral and cannot support a Title VII violation.

Flemons now claims Rodgers denied him overtime opportunities on several occasions but cites no specific instance in which he requested overtime and was not subsequently offered it. (*Id.* ¶ 82). Around Christmas 2016, Flemons alleges Rodgers told Flemons and his colleagues there would be an overtime opportunity, but Flemons claims Rodgers later took that opportunity for himself. (*Id.*). On another unspecified date, Flemons alleges Rodgers offered him overtime, but only after offering a few other employees, and Flemons denied it because he did not want to be the "last resort." (*Id.*). On another unspecified date, Flemons said Rodgers took overtime for himself rather than asking Flemons. (*Id.*). However, Flemons admits he did not ask for overtime

on that specific occasion. (*Id.*). Flemons acknowledges that once he complained about not receiving enough overtime, he started to get more overtime. (*Id.*). Additionally, Flemons admits to multiple instances of being offered overtime and turning it down. (*Id.*). The University has no record of Flemons reporting the alleged denial of overtime opportunities to OAE or to HR as a form of harassment or retaliation. (*Id.*).

Flemons also claims he was "disallowed" from taking a civil service exam in October 2015. (*Id.* ¶ 83). Flemons says he sent an online request to the University to take the exam, but claims he was told he didn't have the experience and wasn't qualified to take the test. (*Id.*). Flemons acknowledges, however, he does not know who made the decision. (*Id.*). His suspicion that the decision was racially motivated rests entirely on the fact that another white co-worker took the test around the same time. (*Id.*). Flemons admits the co-worker had been working at the University for much longer than Flemons. (*Id.*). Flemons never reported that he was allegedly denied an opportunity to sit for the civil service exam to OAE or to HR as a form of harassment or retaliation. (*Id.*).

On May 18, 2016, Flemons alleges he and Rodgers had a heated exchange at work, which resulted in a pre-disciplinary meeting with the Operations, Maintenance, and Alterations division. (*Id.* ¶ 84). Flemons ultimately received a work-performance reminder related to this incident. (*Id.*). This type of reminder includes a six-month probationary period. (*Id.*). Flemons, however, never reported that he was allegedly disciplined without justification to OAE or to HR as a form of harassment or retaliation. (*Id.*).

**D.   A co-worker's harassment complaint against Flemons resulted in negative findings against Flemons.**

On June 17, 2014, Paul Rutledge, a laborer in F&S, submitted an informal complaint with OAE alleging harassment based on gender by Flemons. (*Id.* ¶ 85). Rutledge, who is white, alleged that Flemons harassed him for years by calling him "cunt," "retard," and saying "you suck good dick." (*Id.*). Rutledge also claimed that Flemons had threatened to kick his "ass." (*Id.*).

Flemons claimed the complaint was "baseless" and part of a concerted form of retaliation by Rutledge and Rodgers. (*Id.* ¶ 86). Flemons alleges that Rutledge called him a "boot," (presuming it as a shorthand for the racist term "bootlip") and "dumb" on multiple occasions. (*Id.* ¶ 87). The University has found no record of Flemons complaining to OAE about Rutledge's alleged racial harassment prior to Rutledge filing his complaint against Flemons. (*Id.*).

In responding to Rutledge's complaint, OAE began an investigation, including interviewing several witnesses who had allegedly seen or heard some of the alleged exchanges between Flemons and Rutledge. (*Id.* ¶ 88). The witnesses said they observed Flemons addressing Rutledge even when Rutledge had asked Flemons to leave him alone. (*Id.*). They said they "could see" Flemons acting in the manner Rutledge described in his complaint, but had not personally witnessed any of Rutledge's allegations. (*Id.*). They described Rutledge as a good laborer and Flemons as lacking in work ethic and doing substandard masonry work. (*Id.*).

On July 3, 2014, OAE concluded Rutledge's complaint did not rise to the legal standard of harassment, (*id.* ¶ 89), but OAE recommended that Flemons avoid contact with Rutledge unless there was a business need and that Flemons attend an OAE training about appropriate conversations in the workplace. (*Id.*).

## E.   Flemons' other alleged instances of supposed racial harassment were either not related to his employment or were race neutral.

Finally, Flemons alleges he saw vehicles with Confederate symbols parked on the UIUC campus on two occasions. (*Id.* ¶ 90). He claims a truck with a Confederate flag was parked on campus in a parking lot for University personnel March 2017. (*Id.*). He also alleges he spotted a car with two Confederate flag stickers parked on campus multiple times in a parking lot for University personnel in June 2017. (*Id.*). Flemons did not indicate he knew who owned the vehicles. (*Id.*).

On June 29, 2017, Flemons emailed Heidi Johnson, the OAE director, about the latter incident, and she responded the same day with various resources for Flemons to pursue a report. (*Id.* ¶ 91). Flemons said he did not follow up with those resources. (*Id.*).

Flemons also claims that in 2019, Rodgers repeatedly questioned him about the whereabouts of a vacuum cleaner, but only questioned a white co-worker one time. (*Id.* ¶ 92).

## III.    ARGUMENT

### A.    Standard of Review.

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Advisory Comm. Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. App., p. 626). Ultimately, summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Carter v. Pension Plan Of A. Finkl & Sons Co. For Eligible Off. Emps.*, 654 F.3d 719, 727–28 (7th Cir. 2011).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Additionally, "[a] party that bears the burden of proof on a particular issue cannot rest its case on the pleadings, but must demonstrate by specific factual allegations that there is a genuine issue of material fact that requires a trial." *Tri-Gen Inc. v. Int'l Un. of Oper. Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1030 (7th Cir. 2006). If the evidence favoring the non-moving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

The *only* two causes of action remaining are Flemons' individual claims of hostile work environment and retaliation under Title VII of the Civil Rights Act. Flemons' other claims were either dismissed or waived.[4] (SOF ¶ 16). Each claim fails as a matter of law.

**B.      Plaintiff's Hostile Work Environment Claim Fails.**

A hostile work environment exists when a workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of . . . employment." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Flemons must show that "he was subject to unwelcome harassment . . . based on his race," "the harassment was severe or pervasive," and "a basis for employer liability." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

>    *1.      Most of the incidents underlying Flemons' hostile work environment claim are time barred.*

In the context of hostile work environment claims, courts only consider allegations that fall outside of the statute of limitation (*i.e.*, more than 300 days prior to the filing of a plaintiff's EEOC charge) if they qualify as a "continuing violation," *i.e.*, "the acts involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Sanford v. Walgreen Co.*, No. 08-CV-6325, 2009 WL 3152795, at *5 (N.D. Ill. Sept. 23, 2009).

Here, Flemons filed his EEOC charge on February 2, 2017 and amended it on May 18, 2017. (SOF ¶ 94). Flemons alleges only two purported examples of discriminatory conduct within the statute of limitations. Flemons alleges (1) that Bruce Rodgers, a supervisor, questioned Flemons in 2019 about whether he knew the whereabouts of a vacuum; and (2) that Flemons observed a car with two confederate flags in parking lots reserved for University personnel in March 2017 and June 2017, which he then reported. (SOF ¶¶ 90–92). As to the first allegation, Flemons' only other claims about Rodgers date back to 2013 or before—more than six years earlier

---

[4] The Court dismissed Plaintiffs' claims under the Illinois Civil Rights Act and noted their state-law discrimination claims would need to be filed under the Illinois Human Rights Act ("IHRA"), if at all. Plaintiffs never sought to amend their Amended Complaint and any attempt to do so now would be time barred under the IHRA. *See* 775 Ill. Comp. Stat. 5/7A-102(A)(1).

and far outside the statute of limitations. *See, e.g.*, *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019) ("The simplest factor is time: A significant gap between alleged incidents of discriminatory harassment can sever the hostile work environment claim. There is no magic number; the question is whether the series of allegations describe continuous conduct rather than isolated incidents.") (citation omitted). As to the allegation concerning confederate decals, Flemons never provided the identity of the owner of the car referenced above, much less indicated whether that person had some connection to his untimely allegations. Indeed, at his deposition, Flemons appeared to speculate the car belonged to "a transportation driver"—thus, there is no indication he worked with the driver (SOF ¶ 90). And, to the extent Flemons attempts to invoke conclusory, undated or otherwise non-specific allegations, such allegations cannot render untimely conduct timely. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714 (7th Cir. 2004); *Milligan-Grimstad v. Stanley*, 877 F.3d 705 (7th Cir. 2017). Accordingly, the allegations that occurred outside of the statute of limitations must be disregarded.

>    2.    *Flemons was not subjected to a hostile work environment.*

The undisputed evidence also demonstrates that the conduct at issue was not severe, pervasive or largely attributable to Flemons' race. Factors to be considered include the severity of the alleged conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). "We . . . assume employees are generally mature individuals with the thick skin that comes from living in the modern world. As a result, employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) (citation omitted); *see also Scruggs*, 587 F.3d at 840; *Oenning v. Caremark, Inc.*, No. 01 C 462, 2001 WL 1230622, at *3–4 (N.D. Ill. Oct. 11, 2001) ("A certain amount of vulgar banter . . . is inevitable in the modern workplace . . . .").

None of the alleged conduct at issue is sufficiently severe or pervasive to establish a hostile work environment claim.

*First*, Flemons' claim that he was questioned about the whereabouts of a vacuum (SOF ¶ 92) has no discernable connection to any protected category. *See, e.g., Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) (affirming summary judgment in favor of the employer in a hostile work environment claim because allegations of racial harassment must have "*some* [*sic*] connection, for 'not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority'"); *Hypolite v. Kankakee Cnty. Hous. Auth.*, No. 05-2274, 2007 WL 399021, at *5 (C.D. Ill. Feb. 1, 2007) (noting that plaintiff's allegations that they were overworked due to their race were not supported by evidence that other employees worked less or that her job responsibilities were connected to her race); *Triplett v. Starbucks Coffee*, No. 10 C 5215, 2011 WL 3165576, at *5 (N.D. Ill. July 26, 2011) (dismissing hostile work environment claim where the plaintiff alleged, among other things, she was subjected to a racially insensitive comment and "racially-based disciplinary actions, where she was disciplined more severely than similarly situated white employees"); *see also Winters v. Hamos*, No. 16-CV-10777, 2018 WL 3458266, at *4 (N.D. Ill. July 18, 2018) (holding claims of, among things, "baseless poor reviews," an "excessive workload" and a suspension supported claims of discrimination, not hostile work environment).

*Second*, even if the Court considers the time-barred series of alleged clashes between Flemons and Rodgers between 2008 and 2013 (SOF ¶¶ 68–81), courts routinely reject hostile environment claims based on mere personality clashes or generalized claims of scrutiny or hostility. *See e.g.*, *Abrego v. Wilkie*, 907 F.3d 1004, 1015–16 (7th Cir. 2018) (holding that being "subjected to excessive monitoring" by supervisors who were "short tempered, hostile, unfairly critical, and disrespectful" did not create a hostile work environment); *Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008) ("[A] loud, unprofessional tone during one meeting does not satisfy the requirement that the offensive conduct be severe [or] pervasive."). The vast majority of these clashes had no racial component. One isolated comment from Rodgers referring to Flemons as a "big, black guy" (SOF ¶ 75) might "well be viewed as inappropriate and unbecoming, especially from a supervisor, but . . . fall[s] well short of the required showing to support liability." *Baker v.*

*Blue Sky Casino, LLC*, No. 16CV00019, 2018 WL 1566806, at \*7 (S.D. Ind. Mar. 30, 2018); *See Mercer v. Cook Cnty.*, 527 F. App'x 515, 521 (7th Cir. 2013) ("[B]oorish or offensive stray remarks that were neither severe nor pervasive enough to create an objectively hostile work environment.").

*Third*, Flemons' report of seeing confederate flags on a car in a University parking lot (SOF ¶ 90) is insufficiently severe or pervasive to create a hostile work environment. *See, e.g.*, *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 645, 648 (7th Cir. 2011) (holding two instances of co-workers wearing confederate flags in the workplace to be "insufficiently severe to support a hostile work environment claim" and affirming the district court's grant of summary judgment); *Ferguson v. Med. Coll. of Wis.*, 471 F. Supp. 2d 901, 944 (E.D. Wis. 2007) (holding that fellow employees' confederate flag clothing and offensive comments were insufficient to constitute hostile work environment).

*Fourth*, Flemons cannot impute conduct allegedly directed at Black co-workers or elsewhere (*e.g.*, the hearsay incidents allegedly relayed to him by other University employees (*see* SOF ¶ 93)) to himself. "To be actionable, the harassing conduct would have had to be directed at him, and it was not." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 815–16 (7th Cir. 2022) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 545 (7th Cir. 2011) ("[T]he more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that it had an effect on the terms and conditions of the plaintiff's workplace.")); *Lilly v. Roadway Express, Inc.*, 6 F. App'x 358, 359 (7th Cir. 2001) (holding, where coworkers used racial epithets twice outside of the plaintiff's presence, "stray remarks and the random use of a racial epithet are insufficient to support a hostile environment claim"); *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001) ("When harassing statements are 'directed at someone other than the plaintiff, the impact of [such] 'second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.'").

Because none of the conduct at issue amounts to hostile work environment under Title VII, Flemons' claim cannot survive summary judgment.

**C.      Flemons' Retaliation Claim Also Fails as a Matter of Law.**

To defeat summary judgment, Flemons "must present evidence which, taken as a whole, 'would permit a reasonable factfinder to conclude" that retaliation caused the adverse actions at issue. *Bless v. Cook Cnty. Sheriff's Off.*, 9 F. 4th 565, 574 (7th Cir. 2021) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)); *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (noting applicable legal frameworks).  To prove retaliation under Title VII, Flemons must show (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by the University; and (3) a causal connection exists between the two. *Stephens v. Erickson*, 569 F.3d 779, 786–87 (7th Cir. 2009) (citation omitted).

Unlike discrimination claims under Title VII, which are evaluated under a "motivating factor" standard, retaliation claims require proof of "but-for" causation. *See Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014).

Flemons' retaliation claim fails as a matter of law because (i) his claims are largely time barred; (ii) he did not suffer an adverse employment action; and (iii) even if he did suffer a material, adverse employment action, it cannot be connected to any protected activity.[5]

*1.      Most of the allegations underlying Flemons' retaliation claim are time barred.*

For Title VII retaliation claims, courts only consider discrete allegations of adverse employment action that fall within the statute of limitations (i.e., less than 300 days prior to the filing of a plaintiff's EEOC charge). A discrete retaliatory act occurs, for purposes of charge filing requirement of Title VII, "on the date that it happened." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

Here, because Flemons first filed his EEOC charge on February 2, 2017, any alleged adverse action prior to April 8, 2016 is untimely. That leaves only two purported adverse actions that fall within the statute of limitations: (1) Flemons' receipt of "unwarranted discipline" and

---

[5] "Precedent confirms that a plaintiff . . . alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007). To the extent Flemons attempts to rely on conclusory allegations about his complaints of discrimination, he cannot survive summary judgment.

probation in June of 2016; and (2) his alleged denial of overtime in December of 2016.  (SOF ¶¶ 84, 82). Neither of these allegations rise to the level of a material, adverse employment action.

   2.   *Flemons was not subject to a material, adverse employment action.*

Flemons cannot prove that he suffered a "materially adverse" action, which "must materially alter the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). An action is not materially adverse when the plaintiff merely experienced "trivial harms such as petty slights or minor annoyances that often take place at work and that all employees experience." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 912 (7th Cir. 2022); *see also Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace."). Indeed, an action that does not actually "harm" the plaintiff cannot sustain a retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

Flemons' receipt of discipline (and a six-month probationary period) in June 2016 following a heated exchange with Rodgers (SOF at ¶ 84) does not qualify as an adverse employment action. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 n.31 (7th Cir. 2012) ("[T]he district court correctly concluded that the written warnings and the placement of [plaintiff] on probationary status did not rise to the level of a materially adverse employment action"); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) ("While [plaintiff's] negative evaluation, written warnings, and placement on "proof status" are putatively disciplinary measures, none 'result[ed] in tangible job consequences and therefore are not adverse employment actions actionable under Title VII.'").

Moreover, Flemons' allegation that he *and his colleagues* were allegedly denied an overtime opportunity in December 2016 (because Rodgers elected to work it himself) (SOF ¶ 82) plainly does not qualify as an adverse action.  Courts in the Seventh Circuit have held that denial of an opportunity to earn overtime is not a materially adverse employment action because an employee "is not entitled to work overtime every time [he] requests it." *Cisneros v. City of Chi.*,

No. 00 C 8059, 2002 WL 31356404, at *6 (N.D. Ill. Oct. 17, 2002) (granting summary judgment after finding overtime denial did not constitute adverse employment action). Indeed, "los[ing] a weekend of potential overtime pay" is not an adverse employment action when there was "no evidence that [the employer] is required to approve all requests for overtime pay." *Noble v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 130 F. Supp. 3d 1166, 1176 (N.D. Ill. 2015); *see also Wyninger v. New Venture Gear, Inc*., 361 F.3d 965, 979 (7th Cir. 2004) (holding that an employer's denial of overtime pay was not an adverse employment action where there was no evidence that the employer violated its own overtime policies with respect to similarly-situated male employees). Even so, in Flemons' other, undated allegations, he cites no specific instance in which he requested overtime and was not subsequently offered it. (SOF ¶ 82).

> 3.    *Flemons cannot connect any alleged adverse action to protected activity.*

Flemons' claims of retaliation also fail to offer any reasonably plausible connection between the alleged adverse action and any protected activity. Flemons' last complaint of discrimination (referenced either in the Amended Complaint or at his deposition) occurred in 2012. (SOF ¶¶ 73–78). District courts in the Seventh Circuit routinely dismiss Title VII retaliation claims where, as here, a plaintiff alleges he engaged in protected conduct that occurred well before the adverse action in question without any explanation of distant temporal proximity between the two. *See, e.g., Karriem v. Gen. Servs. Admin*., No. 17 C 2572, 2018 WL 6179089, at *8 (N.D. Ill. Nov. 27, 2018) (granting summary judgment and holding that an unexplained four-month delay between the protected activity and the alleged retaliation was "too long to support an inference of retaliation" for establishing causation); *see also Igasaki*, 988 F.3d at 959–60 (affirming summary judgment on a Title VII retaliation claim and holding that "the two-month gap between [plaintiff's] protected activities and his termination cannot show retaliation on its own"); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578–79 (7th Cir. 2021) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)) (citations omitted) (affirming summary judgment on a Title VII retaliation claim when the protected activities "occurred more than a year and more than six months before her termination, respectively," because under Seventh Circuit precedent, courts

"typically allow no more than a few days to elapse between the protected activity and the adverse action" to show causation); *Arnold v. Visiontek Prod.*, LLC, 748 F. App'x 59, 62 (7th Cir. 2019) (affirming summary judgment on a Title VII retaliation claim when "the only circumstantial evidence is that [defendant] fired [plaintiff] about one month after" plaintiff's protected activity and noting that "[t]hat timing, alone, is not sufficiently suspicious to create an inference of retaliation"); *Rogers v. DeJoy*, No. 19 C 5389, 2021 WL 4318083, at \*7–8 (N.D. Ill. Sept. 23, 2021) (citing *Igasaki.*, 988 F.3d at 959–60) (granting summary judgment against a plaintiff's Title VII retaliation claim and holding that plaintiff was unable to establish causation when "almost nine months had elapsed between her protected activity and the adverse action").[6]

Nor has Flemons identified any evidence that a similarly-situated employee received more favorable treatment. District courts routinely grant summary judgment under such circumstances. *See, e.g., Lesiv,*39 F.4th at 919 (affirming summary judgment for the defendant when the "[plaintiff's] comparator evidence could not support a finding that the [defendant] acted with a retaliatory motive"); *Moreland v. Nielsen*, 900 F.3d 504, 507 (7th Cir. 2018) (affirming summary judgment against the plaintiff when comparators were supervised by different persons and were thus not similarly situated); *Abrego*, 907 F.3d at 1013 (affirming summary judgment for the defendant when the plaintiff had "multiple confrontations with supervisors, coworkers, and patients" whereas the proffered comparator had only one confrontation with a coworker); *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019) (citation omitted) (affirming summary judgment against the plaintiff and noting that "when the facts of a case suggest

---

[6] Flemons also cannot bolster his claims with conclusory allegations of "increased scrutiny" and "hostility." *Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at \*5 (N.D. Ill. Sept. 20, 2018) (observing, in dismissing retaliation claim, that plaintiff "fails to provide any nonconclusory factual allegations to causally connect his termination and the [protected activity]"). Nor can he attempt to bridge the causal gap by referencing unspecified complaints "on numerous occasions," which are also too conclusory to establish a temporal (or other) connection between the alleged protected activity and any adverse action. *See Ross v. Univ. of Chi.*, No. 18- CV-4200, 2018 WL 6448464, at \*7 (N.D. Ill. Dec. 10, 2018) (dismissing retaliation claim where the causal nexus between a 2013 EEOC charge, later "unspecified" internal complaints and an adverse action were "at best unclear").

that no reasonable jury could see enough commonality for a meaningful comparison between the employees, summary judgment is appropriate").

## IV.    CONCLUSION

For the reasons stated above, the Court should grant the University's Motion for Summary Judgment as to Plaintiff Atiba Flemons' claims (Counts I and III).


Dated: April 3, 2023                          Respectfully Submitted,

                                              **DEFENDANT THE UNIVERSITY OF
                                              ILLINOIS**


                                              By:     */s/ Christopher B. Wilson*
                                                      One of Its Attorneys

                                                      Christopher B. Wilson
                                                      Jonathan R. Buck
                                                      **PERKINS COIE LLP**
                                                      110 North Wacker, Suite 3400
                                                      Chicago, IL 60606-1511
                                                      Tel: (312) 324-8400
                                                      Fax: (312) 324-9400
                                                      cwilson@perkinscoie.com
                                                      jbuck@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, certify that on April 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 3rd day of April, 2023.

*/s/ Christopher B. Wilson*
Christopher B. Wilson
Jonathan R. Buck
PERKINS COIE LLP
110 North Wacker, Suite 3400
Chicago, IL 60606-1511
Tel: (312) 324-8400
Fax: (312) 324-9400

*One of the Attorneys for Defendant University of Illinois*