E-FILED
Monday, 03 April, 2023  08:39:16 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS

DERICK BROWN, ATIBA FLEMONS, and
JEFFREY TAYLOR

                Plaintiffs,

    v.

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

                Defendant.

Case No. 2:19-cv-02020-JBM-EIL

Honorable Joe Billy McDade

Magistrate Judge Eric I. Long

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFREY TAYLOR'S CLAIMS

Dated: April 3, 2023

Respectfully Submitted,

**DEFENDANT THE UNIVERSITY OF ILLINOIS**

By:   */s/ Christopher B. Wilson*
    One of Its Attorneys

Christopher B. Wilson
Jonathan R. Buck
**PERKINS COIE LLP**
110 North Wacker, Suite 3400
Chicago, IL 60606-1511
Tel: (312) 324-8400
Fax: (312) 324-9400
cwilson@perkinscoie.com
jbuck@perkinscoie.com

## TABLE OF CONTENTS

                                                                                            **Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................. 2

        A.      Taylor's employment at the University. ............................................... 2

        B.      The OAE thoroughly investigates and concludes Taylor's alleged incidents with
                his supervisor were not race-based and did not violate the NDP. ......................... 2

        C.      Taylor claims a Black colleague sent him a Facebook message with the N-word. 4

        D.      Taylor claims he saw or heard about other allegedly racist conduct. .................... 4

        E.      Taylor's disciplinary record. ............................................................... 5

III.    LEGAL STANDARD ........................................................................................ 6

IV.     ARGUMENT ..................................................................................................... 7

        A.      Taylor was not subjected to a hostile work environment. ..................................... 7

                1.      The alleged conduct is not severely or pervasively hostile ........................ 7

                2.      The University took adequate steps to address Taylor's complaints. ........ 12

        B.      Taylor fails to identify any adverse action to establish a viable retaliation claim. 13

V.      CONCLUSION .................................................................................................. 15

        CERTIFICATE OF SERVICE ........................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrego v. Wilkie*,
907 F.3d 1004 (7th Cir. 2018) ...................................................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................6

*Atanus v. Perry*,
520 F.3d 662 (7th Cir. 2008) ....................................................................8

*Badal v. Ariens Co.*,
No. 17-C-1704, 2018 WL 3037401 (E.D. Wis. June 19, 2018) ...............9

*Baskerville v. Culligan Int'l Co.*,
50 F.3d 428 (7th Cir.1995) ......................................................................12

*Boss v. Castro*,
816 F.3d 910 ......................................................................................7, 14

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) .................................................................................12

*Carter v. Pension Plan Of A. Finkl & Sons Co. For Eligible Off. Emps.*,
654 F.3d 719 (7th Cir. 2011) ....................................................................6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................6

*Cisneros v. City of Chi.*,
No. 00 C 8059, 2002 WL 31356404 (N.D. Ill. Oct. 17, 2002) ..............14

*Dandy v. United Parcel Serv., Inc.*,
388 F.3d 263 (7th Cir. 2004) ..................................................................10

*Dawson v. City of Chi.*,
648 F. Supp. 2d 1057 (N.D. Ill. 2009) ...................................................11

*Dorsey v. Morgan Stanley*,
507 F.3d 624 (7th Cir. 2007) ....................................................................6

*Ezell v. Potter*,
400 F.3d 1041 (7th Cir. 2005) ..................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Faragher v. City of Boca Raton,*
524 U.S. 775 ...................................................................................................12

*Ferguson v. Med. Coll. of Wis.,*
471 F. Supp. 2d 901 (E.D. Wis. 2007)..............................................................11

*Fortenberry v. United Airlines,*
28 F. Supp. 2d 492 (N.D. Ill. 1998) ..................................................................13

*Gates v. Bd. of Educ. of the City of Chi.,*
916 F.3d 631 (7th Cir. 2019) ............................................................................10

*Hobbs v. City of Chi.,*
573 F.3d 454 (7th Cir. 2009) ............................................................................14

*Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.,*
804 F.3d 826 (7th Cir. 2015) ..............................................................................7

*Hypolite v. Kankakee Cnty. Hous. Auth.,*
No. 05-2274, 2007 WL 399021 (C.D. Ill. Feb. 1, 2007) .....................................8

*Indest v. Freeman Decorating, Inc.,*
164 F.3d 258 (5th Cir. 1999) ............................................................................12

*Jordan v. Chertoff,*
224 F. App'x 499 (7th Cir. 2006) .....................................................................14

*Lesiv v. Ill. Cent. R.R. Co.,*
39 F.4th 903 (7th Cir. 2022) .............................................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986).............................................................................................6

*Naficy v. Ill. Dep't of Hum. Servs.,*
697 F.3d 504 (7th Cir. 2012) ............................................................................15

*Nichols v. Mich. City Plant Planning Dep't,*
755 F.3d 594 (7th Cir. 2014) ......................................................................10, 11

*Paschall v. Tube Processing Corp.,*
28 F.4th 805 (7th Cir. 2022) .........................................................................9, 11

*Russell v. Bd. of Trs. of Univ. of Ill. at Chi.,*
243 F.3d 336 (7th Cir. 2001) ............................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sanders v. AeroCare USA, Inc.*,
No. 17-CV-1543, 2017 WL 6001489 (C.D. Ill. Dec. 4, 2017) ................................................11

*Smith v. Ne. Ill. Univ.*,
388 F.3d 559 (7th Cir. 2004) ..........................................................................................7, 10

*Stephens v. Erickson*,
569 F.3d 779 (7th Cir. 2009) ........................................................................................13, 15

*Stutler v. Ill. Dep't of Corr.*,
263 F.3d 698 (7th Cir. 2001) ................................................................................................13

*Swyear v. Fare Foods Corp.*,
911 F.3d 874 (7th Cir. 2018) ..................................................................................................7

*Thompson v. Mem'l Hosp. of Carbondale*,
625 F.3d 394 (7th Cir. 2010) ................................................................................................14

*Tri-Gen Inc. v. Int'l Un. of Oper. Engineers, Local 150, AFL-CIO*,
1024, 1030 (7th Cir. 2006) ......................................................................................................6

*Walls v. Turano Baking Co.*,
221 F. Supp. 2d 924 (N.D. Ill. 2002) ....................................................................................10

*Whittaker v. N. Ill. Univ.*,
424 F.3d 640 (7th Cir. 2005) ................................................................................................14

*Wolf v. Nw. Ind. Symphony Soc'y*,
250 F.3d 1136 (7th Cir. 2001) ..............................................................................................12

*Wyninger v. New Venture Gear, Inc.*,
361 F.3d 965 (7th Cir. 2004) ................................................................................................14

*Yancick v. Hanna Steel Corp.*,
653 F.3d 532 (7th Cir. 2011) ......................................................................................9, 10, 11

*Zayas v. Rockford Mem'l Hosp.*,
740 F.3d 1154 (7th Cir. 2014) ................................................................................................8

*Zerante v. DeLuca*,
555 F.3d 582 (7th Cir. 2009) ..................................................................................................6

**STATUTES**

775 Ill. Comp. Stat. 5/7A-102(A)(1) ........................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

RULES

Fed R. Civ. P. 56(a) ......................................................................................................6

Local Rule 7.1(D)(1)(b) ................................................................................................2

## I.        INTRODUCTION

Jeffrey Taylor's hostile work environment claim cannot survive as a matter of law. Taylor, a culinary worker at the University's Urbana-Champaign campus since March 2015, seeks to establish race-based harassment by stringing together isolated incidents, many of which were not based on his race, were not directed to him, and/or were secondhand accounts he heard from other co-workers. Taylor, who is Black, relies on a series of race-neutral incidents with his former supervisor, who is white. The University, however, thoroughly investigated these incidents at that time and determined they did not violate the University's Non-Discrimination Policy. He also rests his claim on a Facebook message he received from a Black co-worker in which the N-word was used—the only specific instance Taylor could remember of any University employee using the N-word in a conversation with him. The remainder of his race-based allegations include supposedly racially-charged activity not directed at him or that he did not see or hear himself. Collectively, Taylor's recitals do not amount to severe or pervasive conduct necessary to establish his claim. Further, Taylor cannot establish liability by the University because the University had reasonable policies to prevent harassment and took adequate measures to thoroughly investigate and resolve his complaints. Taylor admits his work experience is better since his supervisor was reassigned. Taylor cannot avoid summary judgment on his hostile work environment claim (Count I).

Taylor also does not have a viable retaliation claim (Count III). He filed his complaint for racial harassment and discrimination with the University's Office for Access and Equity ("OAE") in October 2017. Taylor fails to identify a single, material adverse action that occurred after this purported protected activity, much less a causal link between this activity and an adverse action. The University is entitled to summary judgment as a matter of law.

## II.    STATEMENT OF FACTS[1]

### A.    Taylor's employment at the University.

Taylor started as a cook in the Dining department of UIUC in March 2015. (Defendant's Local Rule 7.1(D) Statement of Undisputed Material Facts ("SOF") ¶ 96).[2] Taylor works at the Ikenberry Dining Center, where he estimates roughly 30 employees work in the kitchen on a given shift, including five to seven cooks. (*Id*. ¶ 101). Taylor testified he has a good working relationship with many of his Dining department supervisors, including Chris Szymanski, Carrie Anderson, Joseph Murphy, and Keith Garrett. (*Id*. ¶ 102).

At the start of his employment, Taylor received an offer letter, which he signed, that mentioned he would receive new-employee training. (*Id*. ¶¶ 97–98). At the training, Taylor said he learned about the University's goal of having a workplace free of harassment and discrimination. (*Id*. ¶ 99). Also at the training and at various all-hands meetings at the beginning of each school year, Taylor learned about the multiple avenues to redress complaints of racial discrimination or harassment, including through speaking with his supervisor, talking to Human Resources, and/or filing a complaint with OAE.[3] (*Id*.). Additionally, all University employees are presented annually with the University's Non-Discrimination Policy ("NDP") and its reporting procedures through an email from the Chancellor, as well as through annual Title IX training. (*Id*. ¶ 67).

### B.    The OAE thoroughly investigates and concludes Taylor's alleged incidents with his supervisor were not race-based and did not violate the NDP.

On October 20, 2017, Taylor filed an initial complaint with OAE vaguely claiming that in February of 2017, supervisory staff at the dining hall "began harassing me based on my race."

---

[1] The University accepts these facts as true for purposes of this Motion but reserves the right to contest any facts should this Motion be denied.

[2] Given the number of undisputed material facts common to all Plaintiffs, the University has filed one Statement of Undisputed Material Facts that applies to all three Motions for Summary Judgment.  In this Memorandum, the University identifies the material facts applicable to Taylor, per Local Rule 7(D)(1)(b).

[3] During the relevant period of this litigation, the OAE changed its name from the Office of Diversity, Equity and Access ("ODEA") and some of the documents and exhibits refer to that earlier title. For convenience, the office is referred to as OAE throughout.

(*Id*. ¶ 103). Over time, Taylor added to that complaint with allegations that food service supervisor Don Van Liew, who is white, "discriminated and harassed him on the basis of his race." (*Id*. ¶ 105).

Taylor's specific allegations against Van Liew, however, are race-neutral and often seem to be a matter of miscommunication and misunderstanding between two employees working hard under busy conditions rather than examples that would support a claim of racial harassment. For example, Taylor claims:

- On October 20, 2017 (the same day Taylor filed his initial OAE complaint), Van Liew singled him out for not wearing a white chef's jacket. (*Id*. ¶ 106). Taylor said this was the only instance Van Liew spoke to him about being out of uniform. (*Id*.). In an interview with OAE, Van Liew said he understood University policy required cooks to wear white chef's jackets, and that on various occasions he had spoken to at least eight other employees—three of whom are white—about wearing an improper uniform. (*Id*. ¶ 107).
- On October 30, 2017, Van Liew closely monitored him during a shift. (*Id*. ¶ 110). Van Liew explained that he monitors activity for all dining hall operations and was not trying to be "extra-vigilant" of Taylor, who happened to be working that shift at the "front of the house," where Van Liew spends the most time. (*Id*.).
- In November 2017, Van Liew asked Taylor to help a co-worker with food preparation, which Taylor said contradicted the executive chef's instructions to Taylor to watch his own station. (*Id*. ¶ 111). In the OAE report, the University concluded "there was simply confusion between Taylor and Van Liew about [whether Van Liew or the executive chef's] directives take precedence and when." (*Id*.).
- On an unspecified date, Van Liew refused to let Taylor use a cart to move food from the kitchen to the serving area, instead reserving the cart for student workers transporting dirty dishes from the dining area to the kitchen. (*Id*. ¶ 108). Van Liew told OAE he recalled this occurred on the busiest night of the week and he typically reserved carts for student workers transporting dishes. (*Id*. ¶ 109).
- On an unspecified date, Van Liew yelled at Taylor about taking pre-orders when the line was delayed after a diner was rung up incorrectly and needed a refund. (*Id*. ¶ 112). Van Liew said he was confused about the issue—he thought Taylor needed receipt paper, not a refund for the incorrect order. (*Id*.). The OAE report concluded the confusion was a result of Van Liew receiving misinformation from a student worker about what Taylor needed to speed up the delayed line of diners. (*Id*.).

In July 2018, after investigating Taylor's claims, including interviewing four witnesses, OAE found that "there is not a preponderance of the evidence that Van Liew's conduct was based on race." (*Id*. ¶ 113). Instead, "the disagreements between Taylor and Van Liew were motivated by personality clashes and miscommunications rather than race." (*Id*.). One witness, a

dining services employee who is Black, said he never had the impression that Van Liew had an issue with Taylor because of his race and did not think "the squabbles between Van Liew and Taylor are based on race." (*Id*. ¶ 114).

In its report, OEA also noted that Van Liew had since moved to a different dining hall and recommended that he continue to work away from Taylor.   (*Id*. at ¶ 116). Taylor acknowledged to OAE that Van Liew's reassignment changed his work environment "for the better."   (*Id*.).

**C.     Taylor claims a Black colleague sent him a Facebook message with the N-word.**

In or around March 2018, Taylor said he noticed Paige Harrington, a cook who is Black, was not properly weighing steaks at the dining hall. (*Id*. ¶ 119). Taylor reported the issue to a supervisor to "correct the problem." (*Id*.).

In response, Taylor said Harrington sent him a Facebook message that said, in part, "[y]ou could've pulled me to the side and said what you needed to say about the steaks," instead of going directly to the supervisor, and that Taylor was "[t]rying to get a n**** in trouble." (*Id*. ¶ 120). Taylor said he reported the message to OAE and to Rita Davis, a member of the University's Human Resources Department. (*Id*. ¶ 121). At his deposition, Taylor testified this was the only time a co-worker used the N-word in a conversation (written or oral) with him, and that he has never heard a University employee—co-worker or supervisor—use the N-word in his presence at work. (*Id*. ¶ 122).

**D.     Taylor claims he saw or heard about other allegedly racist conduct.**

Taylor alleges one instance in which he saw a Facebook post by a dining hall supervisor that used the N-word. Taylor claims Kalen Janowski, who is white, wrote a post on his personal Facebook page using the N-word. (*Id*. ¶ 123). Taylor said he saw the post through a mutual Facebook acquaintance on October 10, 2017, and testified the acquaintance does not work at the University and that he did not speak to the acquaintance about the post. (*Id*. ¶ 124). Taylor testified that he reported the post to a dining supervisor, Human Resources, and his union vice

president. (*Id*. ¶ 125). He said he has worked with Janowski a few times and never personally had any negative interactions with him. (*Id*. ¶ 126). Taylor further claims he stopped picking up overtime shifts to avoid working with Jankowski and Van Liew, but that he was able to work overtime shifts in the catering department. (*Id*. ¶ 127). Taylor offered no other alleged instances of a supervisor using the N-word. (*Id*. ¶ 128).

Taylor also alleges a few other instances in which he was told about white co-workers discussing the N-word or racial pejoratives. He testified that in December 2018, a Black co-worker was told by a white cook that the cook's child's favorite word is the N-word. (*Id*. ¶ 129). Taylor was not present for this alleged incident. (*Id*.). Taylor also said he heard about a white co-worker at a different dining hall calling hip-hop or R&B music "monkey music," and possibly referring to Black co-workers as "monkeys." (*Id*. ¶ 134). He testified he heard this from other co-workers but was not present for this alleged incident and could not remember specifics of what his colleagues told him the white co-worker allegedly said. (*Id*.).

Taylor also alleges he observed a different supervisor accuse a Black student of stealing. (*Id*. ¶ 132). Taylor "think[s]" the supervisor called the police on the student, who had a malfunctioning meal card. (*Id*.). Taylor also admitted, however, he "personally didn't see the issue that went on with this particular student." (*Id*. ¶ 133). He said he recalled no other incidents between this supervisor and students. (*Id*.).

**E.    Taylor's disciplinary record.**

Taylor has received multiple complaints from coworkers about his disruptive and disrespectful behavior in the workplace, including being disrespectful to supervisors and coworkers, disregarding instructions, leaving food products on the kitchen floor, using profanity, and being absent from work without notice. (*Id*. ¶ 136). For example, on March 13, 2017, Taylor was given a six-month "work performance reminder" as a disciplinary measure for being "rude and argumentative" with supervisor Waqar Ehsan. (*Id*. ¶ 137). Further, on November 13, 2017, Taylor allegedly threw a case of garbanzo-bean cans across the floor causing damage to a

stainless-steel air-cooling wall. (*Id*. ¶ 138). Several employees witnessed the incident. (*Id*.). Taylor was again placed on a six-month "work performance reminder" for this act. (*Id*. ¶ 139).

### III.   LEGAL STANDARD

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Advisory Comm. Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. App., p. 626). Ultimately, summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Carter v. Pension Plan Of A. Finkl & Sons Co. For Eligible Off. Emps.*, 654 F.3d 719, 727–28 (7th Cir. 2011).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Additionally, "[a] party that bears the burden of proof on a particular issue cannot rest its case on the pleadings, but must demonstrate by specific factual allegations that there is a genuine issue of material fact that requires a trial." *Tri-Gen Inc. v. Int'l Un. of Oper. Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1030 (7th Cir. 2006). If the evidence favoring the non-moving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

Taylor's only causes of action remaining are his individual claims of hostile work environment and retaliation under Title VII of the Civil Rights Act. Taylor's other claims were either dismissed or waived.[4] (SOF ¶ 16).

## IV.   ARGUMENT

### A.   Taylor was not subjected to a hostile work environment.

Taylor cannot, as a matter of law, prove that he suffered an actionable hostile work environment, which requires him to establish: (1) his work environment was subjectively and objectively offensive; (2) the harassment was based on his race; (3) the conduct was severe or pervasive enough to interfere with his performance; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

#### 1.   The alleged conduct is not severely or pervasively hostile.

The undisputed evidence demonstrates Taylor's complained-of conduct was not severe or pervasive. To rise to the level of hostile work environment, the alleged conduct must "be sufficiently severe or persuasive to alter the conditions of employment such that it creates an abusive relationship." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). Whether conduct is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). Courts "assume employees are generally mature individuals with the thick skin that comes from living in the modern world. As a result, employers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately not uncommon in the workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) (citation omitted).

---

[4] The Court dismissed Plaintiffs' claims under the Illinois Civil Rights Act and noted their state-law discrimination claims would need to be filed under the Illinois Human Rights Act ("IHRA"), if at all. Plaintiffs never sought to amend their Amended Complaint and any attempt to do so now would be time-barred under the IHRA. *See* 775 Ill. Comp. Stat. 5/7A-102(A)(1).

a. **Taylor's interactions with Van Liew do not establish a hostile work environment.**

Taylor's allegations regarding his former supervisor Van Liew have no discernable connection to any protected category. As support for his claim, Taylor instead offers that he was treated differently than unspecified white employees by virtue of Van Liew commenting on his failure to wear a white chef's jacket (Van did the same with eight other workers, at least three of whom were white) (SOF ¶¶ 106–07); that Van Liew reserved a dining cart for student workers transporting dirty dishes instead of Taylor during a busy night at the dining hall (*id.* ¶ 108–09); that Van Liew monitored Taylor during one shift (*id.* ¶ 110); and that Van Liew and Taylor sometimes miscommunicated about certain tasks during shifts, (*id.* ¶ 111). These bare allegations, without some connection to a racial animus, cannot establish a claim of hostile work environment. *See, e.g., Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) (affirming summary judgment in favor of the employer in a hostile work environment claim because allegations of racial harassment must have "*some* [sic] connection, for 'not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority'"); *Hypolite v. Kankakee Cnty. Hous. Auth.*, No. 05-2274, 2007 WL 399021, at *5 (C.D. Ill. Feb. 1, 2007) (noting that plaintiff's allegations that she was overworked due to her race were not supported by evidence that other employees worked less or that her job responsibilities were connected to her race).

Indeed, Taylor does not claim Van Liew ever made racially derogatory comments. Van Liew's alleged conduct all related to workplace instructions while both employees were working hard in a busy dining hall with a kitchen staff of at least 30 employees. (SOF ¶ 101). As OAE found, "the disagreements between Taylor and Van Liew were motivated by personality clashes and miscommunications rather than race." (*Id.* ¶ 113). Courts routinely reject hostile work environment claims based on mere personality clashes between workers. *See e.g., Atanus v. Perry*, 520 F.3d 662, 676 (7th Cir. 2008) ("[A] loud, unprofessional tone during one meeting does not satisfy the requirement that the offensive conduct be severe [or] pervasive."). Van

8

Liew's single alleged instance of commenting on Taylor's failure to wear a white chef's jacket does not change the analysis when Van Liew did the same for white workers. *See Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814 (7th Cir. 2022) (summary judgment affirmed when supervisor informally reprimanded Black and white workers for violating uniform policy). Nor does Taylor's one example of Van Liew monitoring him during a shift. *See, e.g., Abrego v. Wilkie*, 907 F.3d 1004, 1015–16 (7th Cir. 2018) (holding that being "subjected to excessive monitoring" by supervisors who were "short tempered, hostile, unfairly critical, and disrespectful" did not create a hostile work environment).

Outside of the few race-neutral allegations against Van Liew, Taylor's general allegations about his supervisors' supposed frequent workplace hostility do not establish pervasive, discriminatory conduct for purposes of a hostile work environment claim.[5] (SOF ¶ 103–05); *see Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005) ("Of course, a regular basis could be daily, weekly, monthly or even yearly; [plaintiff] provides no detail on the regularity and so we cannot consider the few comments detailed in the briefs to be pervasive."). In his initial OAE complaint, Taylor makes no meaningful attempt to quantify his supervisors' alleged hostility and instead only describes it in conclusory terms. (SOF ¶ 103). Moreover, any pervasiveness argument is undercut by Taylor's own admission to having a good working relationship with many of his Dining department supervisors. (*Id*. ¶ 102). Taylor cannot establish a hostile work environment claim as it relates to Van Liew or any of his other supervisors.

### b. Taylor's other alleged instances of racial harassment were neither frequent nor severe.

The four specific instances of *racial* harassment that Taylor claims to have experienced fail because they (1) occurred in isolation; (2) were not directed at him; or (3) Taylor has no

---

[5] In general, Taylor's conclusory attempts to support his hostile work environment claim by claiming, without factual support, that white employees were not subjected to hostility or aggression fail as a matter of law. *See Badal v. Ariens Co*., No. 17-C-1704, 2018 WL 3037401, at *6 (E.D. Wis. June 19, 2018); *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 548 (7th Cir. 2011) ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.").

personal knowledge about the actual incidents themselves. "[I]n determining whether remarks 'objectively' create a hostile work environment we must assess the frequency of their use." *Dandy v. United Parcel Serv., Inc*., 388 F.3d 263, 271 (7th Cir. 2004).

For example, Taylor's observation of supervisor Janowski's alleged racial slur on a personal Facebook page is not actionable. (SOF ¶ 123). The post was not directed to or about Taylor, and Taylor, who only worked with Janowski "a few times," has had no issues himself with Janowski. (*Id.* ¶ 126). Courts have rejected hostile work environment claims involving far more disturbing facts of supervisors specifically directing racist language *towards* employees. *See Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 930, 931 (N.D. Ill. 2002) (dismissing hostile work environment claim where supervisor, coupled with non-racial abusive language, "used the word 'nigger' to refer to [plaintiff] in a conversation with a third-party that was overheard by [plaintiff]" and that "occasional use of racial epithets by coworkers not motivated by racial animus does not create a hostile environment"). Moreover, Taylor does not allege the online post—the only overt racist language he claims on the part of a University supervisor—threatened him or affected his work performance, and he was able to mitigate any overtime shifts he claimed he missed by  picking up extra hours in the catering department. (SOF ¶ 127).  *See Yancick,* 653 F.3d at 544 (7th Cir. 2011) ("We will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating.").

The alleged Facebook message Taylor received from his Black co-worker using the N-word is similar unavailing. As a general matter, derogatory language used by coworkers, rather than supervisors, is generally not sufficiently objectively hostile to sustain a claim. *See Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 638–40 (7th Cir. 2019) (affirming summary judgment on racial hostile work environment claim where only evidence of racial harassment was co-worker's use of three racial epithets)*; see also Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (affirming summary judgment when racial epithet and several other incidents of harassment by co-workers were not severe or pervasive to establish hostile

work environment); *Smith*, 388 F.3d at 562 n.2, 566–67. Here, Taylor also cannot claim that racial animus motivated the co-worker. A fair reading of the message indicates the co-worker was referring to herself. (SOF ¶ 120). Moreover, Taylor confirmed this as the only instance in which a co-worker—Black or white—used the N-word in conversation with him, (*id.* ¶ 122), and "one-time use of a racial epithet is not severe enough to trigger liability." *Nichols,* 755 F.3d at 601; *see also Dawson v. City of Chi.,* 648 F. Supp. 2d 1057, 1069 (N.D. Ill. 2009) (holding that the one-time use of a racial epithet by a coworker and a separate incident of staring were insufficient to show severe or pervasive harassment as required for employer liability under a hostile work environment claim); *Sanders v. AeroCare USA, Inc.,* No. 17-CV-1543, 2017 WL 6001489 (C.D. Ill. Dec. 4, 2017) (holding that a single use of a racial epithet directed at and overheard by the plaintiff was insufficient for hostile work environment claim).

Finally, Taylor cannot impute conduct allegedly directed at other Black co-workers or a Black student to himself. (SOF ¶¶ 123–35). "To be actionable, the harassing conduct would have had to be directed at him, and it was not." *Paschall*, 28 F.4th at 815–16 (citing *Yancick*, 653 F.3d at 545 ("[T]he more remote or indirect the act claimed to create a hostile working environment, the more attenuated the inference that it had an effect on the terms and conditions of the plaintiff's workplace.")). For example, Taylor only heard about a cook in a different dining hall's use of the N-word in discussing his child's "favorite word" second-hand, thereby lessening its effect on him. (SOF ¶ 129). *See Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001) ("When harassing statements are 'directed at someone other than the plaintiff, the impact of [such] 'second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.'"). Moreover, his speculative claims that a cook in a different dining hall referred generally to rap and hip-hop as "monkey music" and Black co-workers as "monkeys" (SOF ¶ 134) are also hearsay, and even if true, these "stray comments of a racist nature, as opposed to serious or threatening comments, simply do not rise to the level of harassment which is actionable." *Ferguson v. Med. Coll. of Wis.*, 471 F. Supp. 2d 901, 944 (E.D. Wis. 2007) (citations omitted) (holding that fellow employees' confederate flag clothing and

offensive comments were insufficient to constitute hostile work environment). The University is entitled to summary judgment on his hostile work environment claim.

### 2. The University took adequate steps to address Taylor's complaints.

Even if Taylor could prove his alleged racial harassment was severe and pervasive to establish his hostile work environment claim, the record is also clear that the University took adequate steps to remedy any alleged harassment. An employer is liable for supervisory harassment that results in a tangible employment action. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1988). A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1142 (7th Cir. 2001). Here, Taylor alleges no tangible employment action. Therefore, the University can raise an affirmative defense to liability by establishing (1) it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998); *Faragher*, 524 U.S. at 807–08. Even if an employee took advantage of the employer's preventive or corrective opportunities, the employer can still prevail under the *Faragher/Ellerth* affirmative defense so long as the employer can show that its responsive actions were timely and reasonably likely to prevent similar conduct from recurring. *See, e.g., Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 265–66 (5th Cir. 1999); *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 432 (7th Cir.1995) (employer legal duty for harassment discharged when it takes reasonable steps to discover and rectify conduct).

Here, the University took reasonable care to prevent and correct promptly any allegedly harassing behavior raised by Taylor. In particular, the University has robust anti-harassment and reporting policies, including the distribution of written policies and annual meetings for employee awareness. (SOF ¶ 67). The University's NDP has a section addressing "complaint and

grievance procedures" and directs employees with complaints to contact several different offices, including OAE and Human Resources department. (*Id.* ¶ 99). Taylor was aware of these outlets and utilized them to report alleged harassing conduct. (*Id.* ¶¶ 99, 103). Here, despite OAE's finding that Taylor's supervisor Van Liew had not violated the NDP, OAE recommended Van Liew remain at his new assignment, away from Taylor. (*Id.* ¶ 116). The University also took prompt and adequate action in response to Taylor's complaint. Indeed, Taylor testified his work experience improved following Van Liew's reassignment. (*Id.*). *Fortenberry v. United Airlines,* 28 F. Supp. 2d 492, 497 (N.D. Ill. 1998) ("Courts in this circuit have held that an employer's remedial action need not meet the complaining employee's expectations, it need only be timely and reasonable."). Because the University cannot be liable for its thorough investigation and prompt action, Taylor cannot establish a claim for hostile work environment.

**B.     Taylor fails to identify any adverse action to establish a viable retaliation claim.**

To prove retaliation under Title VII, Taylor must show (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. *Stephens v. Erickson*, 569 F.3d 779, 786–87 (7th Cir. 2009) (citation omitted). Here, assuming Taylor engaged in a statutorily protected activity when he filed his initial OAE complaint on October 20, 2017, Taylor cannot prove that he suffered an adverse action that "materially alter[ed] the terms and conditions of employment." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). Nor can he establish a causal connection between any action by the University and his OAE complaint.

As a threshold matter, it is unclear what, if anything, Taylor claims was an "adverse action" on the University's behalf after he filed his OAE complaint. This lack of allegations sinks his claims. To the extent Taylor alleges the six-month probationary period he received for throwing the box of garbanzo-bean cans in the kitchen in November 2017 is "adverse," (SOF ¶¶ 138–39), courts have repeatedly found disciplinary measures or reprimands alone do not constitute materially adverse actions when they "did not result in tangible job consequences"

such as discharge or changes in the terms of employment, which Taylor does not allege and for which there is no support in the record. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005); *see also Hobbs v. City of Chi.*, 573 F.3d 454, 463 (7th Cir. 2009) (holding there was no evidence the plaintiff "suffered loss of a job title or received less pay" and adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities.")

To the extent Taylor claims Van Liew's single alleged instance of "monitoring" Taylor on October 30, 2017, constituted an adverse action (SOF ¶ 110), such activity falls into the category of annoyances, slights, and interpersonal issues that are not materially adverse. *Boss*, 816 F.3d at 918 (holding that employment-discrimination laws do "not protect against petty slights, minor annoyances, and bad manners"); *see also Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010) ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace.").

And to the extent Taylor claims an adverse action by losing overtime pay when he supposedly avoided shifts with Van Liew and Janowski (SOF ¶ 127), courts have found time and again that denial of overtime opportunities does not constitute a material adverse action when the opportunities are not essential to the plaintiff's career or if the plaintiff retained other overtime opportunities (which Taylor did). *Cisneros v. City of Chi.*, No. 00 C 8059, 2002 WL 31356404, at *6 (N.D. Ill. Oct. 17, 2002) (granting summary judgment after finding overtime denial did not constitute adverse employment action, noting that "[an employee] is not entitled to work overtime every time she requests it"); *see also Jordan v. Chertoff*, 224 F. App'x 499, 502 (7th Cir. 2006) (holding that denial of overtime was not materially adverse action); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004) (holding that an employer's denial of overtime pay was not an adverse employment action where there was no evidence that the employer violated its own overtime policies with respect to similarly-situated male employees).

Even assuming Taylor could demonstrate a material adverse action, Taylor also cannot prove a causal link between his protected activity and these adverse actions. Direct evidence of

retaliation requires "an actor's admission of discriminatory animus," which Taylor has not provided. *Stephens*, 569 F.3d at 787 (7th Cir. 2009).  Taylor also has not identified any "similarly situated employee who was not adversely affected." *Naficy v. Ill. Dep't of Hum. Servs.*, 697 F.3d 504, 512 (7th Cir. 2012); *see also Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 919 (7th Cir. 2022) (affirming summary judgment for the defendant when the "[plaintiff's] comparator evidence could not support a finding that [defendant] acted with a retaliatory motive").

## V.    CONCLUSION

For the reasons stated above, the Court should grant the University's Motion for Summary Judgment as to Plaintiff Jeffrey Taylor's claims (Counts I and III).

Dated: April 3, 2023                    Respectfully Submitted,

                                        **DEFENDANT THE UNIVERSITY OF ILLINOIS**

                                        By:    */s/ Christopher B. Wilson*
                                               One of Its Attorneys

                                               Christopher B. Wilson
                                               Jonathan R. Buck
                                               **PERKINS COIE LLP**
                                               110 North Wacker, Suite 3400
                                               Chicago, IL 60606-1511
                                               Tel: (312) 324-8400
                                               Fax: (312) 324-9400
                                               cwilson@perkinscoie.com
                                               jbuck@perkinscoie.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, certify that on April 3, 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to all attorneys of record.


I certify under penalty of perjury that the foregoing is true and correct.

DATED this 3rd day of April, 2023.


*s/ Christopher B. Wilson*
Christopher B. Wilson
Jonathan R. Buck
**PERKINS COIE LLP**
110 North Wacker, Suite 3400
Chicago, IL 60606-1511
Tel: (312) 324-8400
Fax: (312) 324-9400

*One of the Attorneys for Defendant University of Illinois*